SEEBURG CORPORATION OF DELAWARE, Plaintiff and Counterdefendant-Appellee, *v.* UNITED FOUNDERS LIFE INSURANCE COMPANY OF ILLINOIS, Defendant and Counterplaintiff-Appellant.

First District (5th Division) No. 78-1897

Opinion filed February 22, 1980.—Rehearing denied May 9, 1980.

A. Bradley Eben, Russell H. Matthias, and Michael L. Petersen, all of Chicago (Meyers & Matthias, P. C., and Neistein, Richman, Hauslinger & Young, of counsel), for appellant.

Leo J. Spivack, Norman E. Goldman, and Andrew L. Spivack, all of Spivack and Lasky, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by defendant-counterplaintiff (hereafter defendant) from a judgment for $6,057 in favor of plaintiff-counterdefendant (hereafter plaintiff) in litigation involving group insurance policies issued by defendant to plaintiff and the latter's wholly owned subsidiary, Williams Electronics, Inc. (hereafter Williams). Defendant's contentions on review are (1) that the trial court's finding that defendant was not entitled to combine the experience figures attributable to the policies issued by defendant to plaintiff and Williams in calculating whether any rebate was due was against the manifest weight of the evidence; (2) that even if such combining was properly disallowed, the trial court otherwise improperly calculated the rebate due plaintiff in its judgment; and (3) that the trial court also erred (a) in denying defendant's motion for judgment in its

favor at the close of plaintiff's case and (b) in failing until the seventh day of trial to require plaintiff to verify its response to defendant's request to admit facts.

From our review of the record, it appears that in the fall of 1969, plaintiff, Williams and Gulbransen (another of plaintiff's wholly owned subsidiaries) searched for a new carrier for their employee group insurance policies after premiums had been increased on their existing policies. In the course of this search, plaintiff was directed to Amalgamated Insurance Agency Services, Inc. (Amalgamated), an insurance agency for various companies, including United. This led to a meeting in November of 1969 between Ralph Isaacksen (plaintiff's vice-president of personnel), Myer Breen (president of Amalgamated), and David Sonen (the latter's assistant). Breen testified that at this meeting he was advised of the corporate structure of plaintiff and its subsidiaries, which included several South Atlantic divisions or "affiliates," and that he told Isaacksen that a saving would result if all the companies were grouped into one policy because the higher premiums would ultimately result in a higher rebate under United's "experience rating plan." Sonen testified, however, that the subsidiaries were not mentioned at that initial meeting; that he first learned of Williams "some days" after the meeting; and that he never suggested a master contract to cover all the subsidiaries.

In any event, it appears clear that Isaacksen provided Breen with the necessary information and materials as to plaintiff and that the materials regarding Williams and Gulbransen were later sent to Amalgamated. In the following months, Sonen (either alone or accompanied by Breen) had approximately seven more meetings with Isaacksen and other plaintiff officials, such as James Czech (assistant controller), James Hughes (vice-president), and Louis Nicastro (president and board chairman). Further, it is clear that Amalgamated was told at some point by a plaintiff official to contact Williams to discuss the possibility of acquiring their insurance also. Sonen testified that in late November of 1969 he met with Russell Babb (Williams' vice-president of operations), who told him it was imperative that Williams' hourly and salaried employees be treated separately, since the hourly employees were represented by a "tough union" and different benefits were applicable, and that Babb also said Williams was "a separate company from plaintiff * * * and that everything was to be kept separate."

As a result of the various meetings, Breen informed Nicastro in a letter dated November 28, 1969, of the premium rates which would apply to plaintiff and added that Amalgamated hoped to complete its study on the "Gulbransen and Williams segments within a week." On March 27, 1970, Breen wrote to Hughes, informing him of the acceptance of group life insurance for Williams and, on that same date in a separate letter to

Hughes, Breen said that the Gulbransen group life policy had also been accepted.

United ultimately issued several policies, effective as of April 1, 1970, which are the subject matter of the instant litigation, namely:

| | |
|---|---|
| GA—103 | Issued to Seeburg as group policyholder. Group accident and sickness, covering salaried and hourly employees. |
| G—103 | Issued to Seeburg as group policyholder. Group life, covering hourly and salaried employees. |
| GA—103 A(H) | Issued to Williams as group policyholder. Group accident and sickness, covering hourly employees. |
| G—103—A(H) | Issued to Williams as group policyholder. Group life, covering hourly employees. |
| GA—103—A | Issued to Williams as group policyholder. Group accident and sickness, covering salaried employees. |
| G—103—A | Issued to Williams as group policyholder. Group life, covering salaried employees. |

Each policy contained the following provision:

"At the end of each policy year after the first, this policy shall be subject to experience rating in accordance with [United's] experience rating plan then in use, which experience rating plan shall take into account those reserves which [United] shall determine to be necessary or advisable. Any refund which develops from the experience rating shall be paid in cash to the Group Policyholder or upon written notice to [United] by the Group Policyholder, may be applied by the Group Policyholder toward payment of the premiums next falling due under this Policy."

The experience rating plan, in simple terms, is essentially a program whereby rebates to policyholders are calculated by deducting from premiums paid in the amount of claims paid out, a retention charge of 10% of premiums paid in, and a reserve for incurred but as yet unreported claims.

It appears that on July 26, 1974, United terminated retroactively to January 31, 1974, the two policies issued to plaintiff for nonpayment of premiums. On October 15, 1974, plaintiff brought the instant action, seeking a declaratory judgment that the termination of the policies was wrongful, an injunction requiring United to pay all claims arising during the period from February 1 to July 26, 1974, and an accounting on the basis that plaintiff had not received but was entitled to $359,000 under the

experience rating plan. United filed its answer denying all pertinent allegations, and an agreed order was entered which required that United adjust and pay an amount up to $200,000 for claims incurred after February 1; that plaintiff post a surety bond in the face amount of $225,000 in order to guarantee payment of any judgment in favor of United; and that such payment of claims and posting of bond would not prejudice the substantive rights of the parties. Pursuant to this order, United paid out $198,316 in claims and, on October 14, 1975, it filed a two-count counterclaim against Seeburg. Count I thereof alleged that the policies were rightfully terminated as of January 31, 1974, and that it was therefore entitled to the $198,316 it paid in claims after that date, and count II alleged, alternatively, that if the court determined the cancellation to have been wrongful, it was entitled to unpaid premiums in the amount of $427,461 with interest for the period of February 1 to July 26, 1974.

At trial, United took the position that the experience rating plan entitled it to "combine rate" Williams along with plaintiff. Under such an approach, a rebate due one of the two companies was to be reduced by any deficit resulting from the calculation of the other company's rebate. Plaintiff contended, however, that each company's rebate should be calculated and paid separately, with no offset against each other. It is apparently not disputed that upon the termination of the policy Williams' deficit exceeded the rebate due plaintiff and that, under the "combine rate" approach, plaintiff would not be entitled to a rebate.

The trial court held that United's cancellation of the policies was wrongful; that United was not entitled to "combine rate" Seeburg and Williams; that plaintiff was indebted to United for premiums of $340,256 for the period of February 1 to July 26, 1974; that a rebate was due plaintiff; and that plaintiff was entitled to a judgment for the difference of $6,057.

### Opinion

United does not dispute the trial court's holding that the policies were wrongfully terminated but does challenge the remaining aspects of the judgment. It essentially contends that, contrary to the trial court's ruling, it was entitled to "combine rate" Williams and plaintiff (in which case no rebate would be owed to plaintiff); and that, alternatively, assuming the combined rating was properly disallowed, the calculation of plaintiff's rebate under the experience rating plan (and thus the net judgment) was nonetheless erroneous.

With respect to United's first contention that a combined rating approach was proper, it points to the following clause which appeared in all policies issued to plaintiff and Williams:

> "At the end of each policy year after the first, this Policy shall be subject to experience rating in accordance with [United's] experience rating plan then in use * * *."

United urges that, under the above clause, it could employ whatever experience rating plan it had in use at the time; that the evidence shows that its plan which was "then in use" provided for the combination of calculations relating to wholly owned subsidiaries; and that it was therefore entitled to "combine rate" plaintiff and Williams under the policy.

■■ ■ We note that the principles involved in the interpretation and construction of insurance contracts are the same as those involved in construing other contracts. (*Jensen v. New Amsterdam Insurance Co.* (1965), 65 Ill. App. 2d 407, 213 N.E.2d 141; *Schweisthal v. Standard Mutual Insurance Co.* (1964), 48 Ill. App. 2d 226, 198 N.E.2d 860.) Thus, the primary object in the construction of an insurance policy is to determine the intent of the parties. (*LaSalle National Insurance Co. v. Executive Auto Leasing Co.* (1970), 121 Ill. App. 2d 430, 257 N.E.2d 508; *J. L. Simmons Co. v. Lumbermens Mutual Insurance Co.* (1967), 84 Ill. App. 2d 98, 228 N.E.2d 227.) Where there is no ambiguity relative to the terms of the policy, the intention of the parties must be determined from the language of the policy alone (*Allstate Insurance Co. v. Conglis* (1961), 33 Ill. App. 2d 370, 179 N.E.2d 434; *Freeport Motor Casualty Co. v. Tharp* (1949), 338 Ill. App. 593, 88 N.E.2d 499, *aff'd* (1950), 406 Ill. 295, 94 N.E.2d 139) and, in such case, the court should give effect to the plain and obvious import of the language without considering extrinsic evidence unless such construction would lead to unreasonable or absurd consequences. (*Olipra v. Zambelli* (1971), 1 Ill. App. 3d 607, 274 N.E.2d 877; *Mid-Central Mutual Casualty Co. v. Spanjer* (1968), 101 Ill. App. 2d 468, 243 N.E.2d 452.) On the other hand, if the terms are ambiguous and uncertain, the court should consider extrinsic matters such as the purpose sought to be accomplished, the subject matter of the contract, and the circumstances surrounding the issuance of the policy (*Olipra v. Zambelli*; *LaSalle National Insurance Co. v. Executive Auto Leasing Co.*), as well as the conduct of the parties when acting thereunder (*Muller Fuel Oil Co. v. Insurance Co. of North America* (1967), 95 N.J. Super. 564, 232 A.2d 168).

■■ In the case at bar, there can be no dispute that the clause in question does, in fact, allow United to implement the experience rating plan which is "in use" at the end of any given policy year. The policy is clear and unambiguous in this regard, and under the above law we are bound to give effect to the plain and obvious meaning of the language. Thus, we need only determine the type of plan United was employing at the time it insured plaintiff and its subsidiaries.

■ In this regard, we note that while such plan was apparently never

reduced to writing, Guy Finley, who was vice-president of United's group department until December 1, 1973, testified in essence that under plaintiff's policy, a "combined rating" approach was utilized; and that under such an approach a debit resulting from the calculation of a wholly owned subsidiary's experience rating was offset against a credit earned by the parent. Ronald Coleman, who was United's assistant vice-president of the group department until December 1, 1973, and vice-president thereafter, also testified that credits and deficits under the plan "were to be cross-applied or implied [*sic*] in total." Finally, Gene Pemberton, United's assistant vice-president and comptroller from March 1972 to July 1973 and secretary-treasurer thereafter, testified that the experience rating plan applied to plaintiff was that testified to by Finley. Plaintiff has referred us to no evidence, and we have found none, to contradict this testimony. Thus, since the policy allows United to apply any experience rating plan "then in use," and in view of the uncontroverted testimony that United's then current plan called for combined rating, it appears to us that United should be entitled to combine rate Williams and plaintiff.

Plaintiff says, however, without significant argument or citation of authority, that United's position is untenable in that, under such an approach, it could "change the plan from year to year and combine the Plaintiff's employees [*sic*] experience with that of employees of any company it desired (not in any way connected with Plaintiff) and preclude Plaintiff from ever having a credit." We do not believe that such speculation as to what United might be able to do is relevant, however. The clear and unambiguous terms of the policy allow United to combine rate plaintiff and its subsidiary, and we do not think that this would be an absurd or unreasonable result. See *Olipra v. Zambelli.*

Furthermore, although we need not consider extrinsic matters in view of the unambiguous nature of the clause, the evidence shows considerable interaction between plaintiff and Williams in the negotiation and performance of the policies, which we believe is not inconsistent with our construction of the contract as allowing United to combine rate plaintiff and Williams. We note Hughes' testimony that plaintiff directed United to make bids to Williams concerning insurance. Sonen also testified to this effect, stating that after his first meeting at the office of plaintiff, he received a telephone call from Czech asking him "to make a visit to Williams Electronics to discuss their group insurance." In addition, Breen testified that when he met with plaintiff officials, he was informed of the corporate structure of plaintiff, including the existence of its subsidiary, Williams; and that he told them a premium savings would result if the companies were grouped into one policy, although the record is unclear as to whether there eventually was a grouping as contemplated by Breen or a savings. Further, much of the documentary evidence

indicates similar crossovers between the parties. In his cover letter of March 26, 1969, to Breen, Czech stated that he was enclosing relevant information as to the policies formerly held by Williams with another insurer. In a memo from Sonen to Finley, dated December 2, 1969, Sonen referred to the policies for "Seeburg and all its companies" as one "case." On March 22, 1970, Breen sent a letter to Hughes confirming Amalgamated's acceptance of group insurance for Williams. In a letter of July 23, 1971, Sonen informed Czech that he had instructed the "Home Office" to send him (Czech) monthly printouts of "both Williams and Seeburg's claims." Finally, the monthly premium notices sent to Williams list Williams as the account name and Seeburg as the policyholder. Thus, we think our construction of the policy as allowing United to "combine rate" plaintiff and Williams is consistent with the above extrinsic evidence.

Plaintiff, however, points to certain testimony which it claims is inconsistent with the proposition that the parties intended to authorize "combine rating." Initially we note, as stated above, that the terms of the policy are clear and unambiguous in that regard, and thus we need not consider this extrinsic evidence. (*Olipra v. Zambelli.*) Moreover, we do not feel that the matters of record relied upon by plaintiff are particularly persuasive. It first points to Sonen's testimony that, at the initial meeting with Breen and Isaacksen, plaintiff's subsidiaries were not mentioned. This is of little significance, however, since Sonen later testified that Czech called him on the telephone and asked him to visit Williams to discuss their group insurance, and it is thus clear that Sonen was aware of Williams' existence early in the negotiations. Plaintiff also indicates that, concerning his meeting with Babb, Sonen testified that Babb "told me that they had to keep everything separate and that this had nothing to do—this is a separate company from Seeburg." We note, however, that Sonen later testified that the reason Babb stressed this separation was because the hourly employees had a tough union and different benefits applied to the hourly and salaried people. Further, Finley testified that this was the only reason separate policies were issued. Finally, plaintiff especially relies on Sonen's testimony that he never suggested a pooling between Williams and Seeburg and that at no time did any United officer suggest to him that there should be a pooling of experience between the companies. We feel this testimony is of limited value, however, in light of Sonen's testimony on cross-examination that he did not know what the term "experience rating" meant.

■■ We therefore conclude that the trial court improperly denied United its contractual right to "combine rate" plaintiff and Williams, and we reverse the judgment on that basis. In view of this holding, it will not be necessary to consider United's remaining contentions; but, because we are unable to ascertain either from the record or the briefs the effect that

our holding may have on any amount that may be due or owing, this cause is remanded for that determination.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.