Martin BRACKIN, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, a corporation, Defendant.

No. 88 C 9123.

United States District Court, N.D. Illinois, E.D.

March 15, 1989.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiff Martin Brackin brought this suit against defendant Metropolitan Insurance and Annuity Company ("MIAC") as a beneficiary of his deceased wife's $50,000 life insurance policy with MIAC. MIAC has moved for summary judgment on the grounds that the contract is invalid because it was induced by fraud. For the reasons set forth below, the motion will be granted.

FACTS

Mrs. Judith Brackin applied for life insurance with MIAC on May 14, 1985 after Richard Reinert, an insurance agent for MIAC, told her that the fact that she previously had undergone treatment for cancer did not necessarily prevent her from obtaining life insurance. The application form stated, in part, that:

[MIAC] will have no liability until a policy is delivered personally to the owner and the first full premium is paid. The policy will then be in effect as of the date of its issue. But it will not be in effect unless at the time it is delivered:

(a) the condition of health of each person to be insured ... is the same as given in the application; and

(b) no person to be insured ... has received any medical advice or treatment from a physician or other practitioner since the date of the application.

In her May 14 application, Mrs. Brackin disclosed that she had had a malignant polyp removed by Dr. Robert Bonus in 1983. She described her prognosis as excellent.

Between May and August, 1985 MIAC reviewed Mrs. Brackin's application, and contacted Dr. Bonus to verify Mrs. Brackin's description of her condition.[1] The doctor essentially confirmed what Mrs.

---

1. In an affidavit in opposition to the motion for summary judgment, Mr. Brackin has stated that he had a telephone conversation with Mr. Reinert in July during which he informed Mr. Reinert that his wife's condition was "not good." MIAC has moved to strike this portion of the affidavit because Mr. Brackin made no refer-

ence to this conversation in his deposition. *See* *Miller v. A.H. Robbins Co.,* 766 F.2d 1102 (7th Cir.1985). However, because this court finds that conversation irrelevant to the resolution of the summary judgment motion, the motion to strike is unnecessary and therefore denied.

Brackin had represented in her application. Based on these representations, MIAC determined that Mrs. Brackin could obtain life insurance, and Mr. Reinert soon contacted her to come to his office to sign the appropriate form.

On August 17, Mr. Brackin visited Mr. Reinert's office. Mr. Reinert told him that the insurance policy had issued, and that all Mrs. Brackin had to do was to sign an application amendment. Mr. Brackin reviewed the application, which stated in pertinent part as follows:

I have reexamined the statements and answers in the [May 14 application]. Except as amended by this form, those answers remain true and complete to the best of my knowledge and belief.

\*    \*    \*    \*    \*    \*

To the best of my knowledge and belief, the statements and answers in the application as amended by this form are true and complete as of the date this form is signed. There are no facts or circumstances which would require a change in the answers in the application, except as shown above.

Mr. Brackin asked Mr. Reinert to clarify these portions of the application amendment. Mr. Reinert stated that they meant: "Were the answers that were given at the time of the application true at that time, and do you agree to the amendments that have been made to the original application?"

Mr. Brackin took the application amendment form home to his wife. When he gave it to her, she read it and signed it without further inquiry. Mr. Brackin then enclosed the form in an envelope with Mrs. Bracken's first payment and mailed it to MIAC.

On October 16, 1985 Mrs. Brackin died of cancer. Mr. Brackin soon advised MIAC of her death, and requested payment of the $50,000 face amount of the life insurance policy. MIAC, however, refused to pay after determining that Mrs. Brackin's health had not been as she had represented on the May 14 application and had deteriorated between that date and the time she signed the August 17 application amendment.

Specifically, MIAC pointed to the following events in maintaining that Mrs. Brackin had fraudulently induced the insurance contract. First, Mrs. Brackin had not disclosed in her original application that, subsequent to the removal of her malignant polyp in March of 1983, she had suffered a recurrence of her cancer, and in 1984 had undergone further surgery as well as substantial radio- and chemotherapy in an effort to eradicate it. Furthermore, Mrs. Brackin had not disclosed in the August 17 form that she had been hospitalized for two weeks in mid-July, 1985 and diagnosed as suffering from a spread of her cancer to her heart and lungs. She also had not disclosed that she had been hospitalized again in late July and released on August 8, just nine days before she signed the application amendment.

Mr. Brackin contends that Mrs. Brackin's failure to reveal these facts does not invalidate the contract. With respect to the original application, Mr. Brackin argues that Mrs. Brackin made every effort to provide full disclosure of her past illness, expressly indicating the removal of the malignant tumor and further providing the name of her doctor so that MIAC could obtain the further details. Mr. Brackin points out that, as of May 14, Mrs. Brackin had been symptom-free for a year and therefore honestly represented that her prognosis was excellent.

As for Mrs. Brackin's failure to reveal the deterioration in her condition after May 14, Mr. Brackin insists that the application amendment did not explicitly require Mrs. Brackin to provide this information. He further argues that Mr. Reinert's statements led him to believe that all Mrs. Brackin was doing by signing the form was attesting to the truthfulness of her May 14 representations as of May 14, and therefore that Mrs. Brackin's failure to disclose her July and August hospitalizations did not constitute intentional misrepresentations.

## DISCUSSION

Whether Mrs. Brackin's failure to disclose her 1984 operation and treatment in her original application invalidates the insurance policy presents a close question. "Under Illinois law, which is applicable in this case, the presence of false statements in an application for insurance is not in itself a ground for avoiding an insurance policy issued on the basis of the application; the insurer must prove that the false statements either were made with intent to deceive *or* involved matters materially affecting the acceptance of the risk." *Apolskis v. Concord Life Insurance Co.*, 445 F.2d 31, 35 (7th Cir.1971) (emphasis added); *Roberts v. National Liberty Group*, 159 Ill.App.3d 706, 708, 111 Ill.Dec. 403, 512 N.E.2d 792 (1987) (citing Ill.Rev.Stat.1985 ch. 73, ¶ 766).

A jury question clearly exists with respect to Mrs. Brackin's intent in completing the original application forms. Although the application form did request that applicants give full details of all past illnesses, Mrs. Brackin might well have believed that by indicating the nature of her illness and her prognosis she had satisfactorily responded. The fact that she disclosed the name, address and phone number of her treating physician may not suffice to excuse her non-disclosures, *Apolskis v. Concord Life Insurance Co.*, 445 F.2d 31 at 35–36; *compare Meier v. Aetna Life & Casualty Standard Fire Insurance Co.*, 149 Ill.App.3d 932, 939–40, 103 Ill.Dec. 25, 500 N.E.2d 1096 (1986) (insurer with reason to believe answers are not true or complete has duty to investigate), but it does militate in favor of Mr. Brackin's position that Mrs. Brackin was not trying to deceive MIAC when she made them. *See Roberts v. National Liberty Group*, 159 Ill.App.3d at 708, 111 Ill.Dec. 403, 512 N.E.2d 792.

Still, because under Illinois law material non-disclosures can invalidate an insurance policy irrespective of the insured's intent, MIAC could obtain summary judgment on the basis of the May 14 application despite the existence of a jury question on Mrs. Brackin's intent. Materiality is a question of fact. *Hancock v. National Council of the Knights and Ladies of Security*, 303 Ill. 66, 135 N.E. 33 (1922); *Garde v. County Life Insurance Co.*, 147 Ill.App.3d 1023, 1032, 101 Ill.Dec. 120, 498 N.E.2d 302 (1986). Therefore, in order to prevail at the summary judgment stage, MIAC must establish that there is no genuine issue with regard to the materiality of Mrs. Brackin's omissions in her May 14 application.

Whether MIAC has satisfied this burden is not at all clear. In support of its motion, MIAC presented affidavits and documents to the effect that it would not have issued the policy had Mrs. Brackin fully disclosed her condition either in the May 14 application or in the August 17 application amendment. Yet, by lumping together Mrs. Brackin's non-disclosures in this way, MIAC has made it difficult to determine whether the non-disclosures regarding Mrs. Brackin's treatments in 1984 alone would have rendered Mrs. Brackin uninsurable. Thus, while Mr. Brackin has offered no evidence to support his contention that these non-disclosures were not material, it may be that MIAC has failed to meet its initial burden of establishing the absence of a factual dispute on this score. *See* Fed.R. Civ.P. 56(e).

The court, however, need not resolve this issue, for there simply is no genuine issue of material fact that Mrs. Brackin misrepresented her condition when she signed the August 17 application amendment, and that these misrepresentations were material. Indeed, Mr. Brackin does not even attempt to argue otherwise. His only arguments are that the application amendment form was ambiguous as to whether it required Mrs. Brackin to update her condition to August 17, and that Mr. Reinert's explanation of the form led Mr. Brackin to believe that all it required was for Mrs. Brackin to attest to the truthfulness of her May 14 representations as of that earlier date. These arguments fail for two reasons.

First, irrespective of what the application amendment form stated, the *original* application clearly provided that the insurance policy would not become effective under two circumstances: if at the time Mrs. Brackin made her first payment her health

had substantially changed from the time she filed the application; or, if Mrs. Brackin had received medical advice or treatment during this period. No reasonable jury could find that after Mrs. Brackin had been diagnosed as having terminal cancer in August, 1985 her health remained substantially the same as the excellent prognosis she had reported in May. Nor could a reasonable jury find that Mrs. Brackin had not received significant medical treatment or advice during her 25 days of hospitalization in July and August. *See Pistas v. New England Mutual Life Insurance Company*, 843 F.2d 1038, 1040 (7th Cir. 1988) ("A person under treatment for stomach cancer, told by his physician that the disease is terminal, is not insurable at any premium significantly less than the face amount of the policy.").

Second, this court cannot agree with Mr. Brackin that the August 17 application amendment form was ambiguous. Although the form did not specifically ask whether Mrs. Brackin had suffered a deterioration in her health after May 14, it did require her to affirm that "to the best of [her] knowledge and belief, the statements and answers in the application as amended by this form are true and complete *as of the date this form is signed.*" (Emphasis added). Mr. Brackin attempts to alter the meaning of this statement by testifying to a purported conversation he had with Mr. Reinert, but that conversation would be admissible only if the written contract were ambiguous. *Zale Construction Co. v. Hoffman*, 145 Ill.App.3d 235, 98 Ill.Dec. 708, 494 N.E.2d 830 (1986); *Seeburg Corp. v. United Founders Life Insurance Co. of Illinois*, 82 Ill.App.3d 1034, 38 Ill.Dec. 272, 403 N.E.2d 503 (1980). It is not. Mrs. Brackin had the obligation to reveal to MIAC that her prognosis was no longer excellent. Because she failed to do so, no contract exists. *Compare National Union Fire Insurance Co. v. Continental Illinois Corporation*, 643 F.Supp. 1434, 1442 (N.D.Ill.1986) (where insurance policy supplement failed to specify that insured had to update facts to date of supplement, "a reaffirmance of a prior representation reaffirms its truth only as of that date").

## CONCLUSION

MIAC's motion to strike portions of Mr. Brackin's affidavit is denied, but its motion for summary judgment is granted.