**GULF RESOURCES & CHEMICAL CORPORATION, a Delaware corporation; and Pintlar Corporation, a Delaware corporation, Plaintiffs,**

v.

**Ian Buchanan GAVINE, an underwriter at Lloyd's, London, on behalf of himself and all those certain other Lloyd's Underwriters subscribing to Certificate No. CFL 13200, each for his own proportion and not for the proportion of any other, Defendants.**

**Civ. No. 89–3010.**

United States District Court,
D. Idaho.

May 2, 1991.

Todd J. Wilcox and Jeffrey A. Thomson, Elam, Burke and Boyd, Boise, Idaho, for plaintiffs.

Robert T. Wetherell and Thomas H. Lopez, Quane, Smith, Howard & Hull, Boise, Idaho, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

RYAN, Chief Judge.

### I. FACTS AND PROCEDURE/SUMMARY OF CLAIMS

The above-entitled action was brought by Plaintiffs Gulf Resources & Chemical Corporation and Pintlar Corporation[1] against Defendants Ian Buchanan Gavine and other underwriters at Lloyd's, London, who had subscribed to Certificate No. CFL 13200, for the non-payment of insurance coverage under this policy. The plaintiffs claim that the policy covered certain claims that the defendants are now unwilling to pay. The defendants filed a Motion for Summary Judgment on January 19, 1990, and the plaintiffs filed their Motion for Partial Summary Judgment on February 20, 1990. Both motions are currently pending and fully briefed. The court took these motions under advisement after a hearing held on November 5, 1990. Pursuant to the request of the court, following the hearing both parties submitted additional briefing on the emotional distress damages issue. Before addressing the merits of these motions, it is necessary to set forth some additional facts.

There are basically two issues involved in this suit: (1) Are the plaintiffs' claims for damages paid for emotional distress and attorney's fees, covered under the policy?

---

1. Pintlar Corporation is a wholly owned subsidiary of Gulf Resources and was previously known as the Bunker Hill Company.

and (2) Did the plaintiffs give the defendants adequate notice of these claims? It is undisputed that the policy [2] was in effect between February 5, 1981, and February 5, 1984. This lawsuit is one of several suits brought in the wake of the Bunker Hill mine closing. When the plaintiffs decided to close the mine, they also made a decision to terminate, as of May 15, 1982, certain retired employees' medical benefit coverage under the Bunker Hill Company (Bunker Hill) medical/surgical hospital plan.

Russell Bower, and other retired employees affected by this decision, filed suit on June 1, 1982, in federal court against Bunker Hill seeking reinstatement of their medical benefit plan, unpaid medical expenses, costs and attorney's fees.[3] Bunker Hill prevailed on its summary judgment motion at the district court level. The Ninth Circuit Court of Appeals reversed and remanded the case for trial.[4] Prior to this trial, however, the *Bower* plaintiffs filed another suit on January 23, 1985, against Gulf Resources & Chemical Corporation (Gulf Resources), alleging that Gulf Resources was also liable under the "alter ego" theory because the sale of the assets of Bunker Hill by Gulf Resources, left Bunker Hill with insufficient funds to pay a judgment against it. Shortly thereafter, on February 25, 1985, the two *Bower* actions were consolidated.

In October and November of 1986, the first phase [5] of the trial was held. This part of the trial dealt solely with the issues of whether Bunker Hill had violated Section 301 of the Labor Relations Management Act, and whether Gulf Resources was an "alter ego." On November 25, 1986, the jury returned a verdict for the *Bower* plaintiffs on both issues. Subsequently, the court ordered judgment in favor of the *Bower* litigants on December 23, 1986, on these issues.

Following the entry of this judgment, the parties entered into settlement discussions, which culminated in the parties executing a Consent Judgment. On December 11, 1987, the federal court approved this Consent Judgment. *See* Exhibit E to Defendant's Memorandum in Support of Motion for Summary Judgment, filed Jan. 23, 1990. Pursuant to the Consent Judgment (1) the retirees' medical benefits were reinstated; (2) $3,043,837.00 was awarded to cover the *Bower* retirees' medical expenses during the period the medical plan was suspended; and (3) plaintiffs' attorneys were awarded $1,798,553.10 in attorney's fees and costs.

The plaintiffs claim that the damages that they were required to pay under this Consent Judgment are covered under the terms of the policy. *See* Amended Complaint, filed Mar. 13, 1989, at 7. The plaintiffs seek partial summary judgment only on the issue of whether the attorney's fees that they were required to pay are losses which are covered by the policy. The defendants, on the other hand, seek summary judgment on all the claims. During oral arguments on the motions, plaintiffs clarified what damages they are seeking. During arguments, plaintiffs conceded that they are only seeking to recover two things. First, contrary to what they plead in their complaint, they are not seeking the entire $3,043,837.00 paid out for medical expenses, but instead they are now only seeking to recover the portion of that total amount that represents what was paid to the *Bower* litigants for emotional distress damages. This amount is estimated to be around $110,000.00. *See* Defendants' Brief in Opposition to Plaintiffs' Claim Regarding Emotional Distress Damages, filed on Nov. 9, 1990 at 5–6; and Plaintiffs' Memorandum Brief in Support of Claim Regarding Emotional Distress Damages, filed

---

**2.** The policy in dispute is entitled "Corporate Fiduciary Liability Insurance;" the parties refer to it as Certificate No. CFL 13200, or simply CFL 13200. The court will refer to it as the policy.

**3.** The claims were based upon alleged violations of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and Section 2 et seq.

of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*

**4.** *Bower v. Bunker Hill Co.,* 725 F.2d 1221 (9th Cir.1984).

**5.** The second phase of the trial would have determined the issues of defendant's liability under ERISA and damages.

Nov. 20, 1990, at 11. Secondly, plaintiffs continue to assert that the policy also covered the $1.8 million paid to the *Bower* litigants for attorney's fees.

The defendants do not dispute that the Consent Judgment was a reasonable compromise in light of the potential liability; they simply question whether the policy covered any of these claims, and whether they were given ample notice of the pending claims as required by the policy.

## II. ANALYSIS

### A. *Summary of Cross–Motions*

Because both summary judgment motions consider and deal with substantially the same issues, the court will address them concurrently to avoid repetition.

There are basically two issues addressed by both motions for summary judgment: (1) Was plaintiffs' decision to terminate the Bunker Hill employee benefit plan a corporate business decision not covered by the policy? and (2) If the claims are covered by the policy, was the notice given to the defendants timely under the circumstances?

### 1. *Coverage Issue.*

In the Amended Complaint, the plaintiffs allege that the damages that plaintiffs had to pay the *Bower* litigants pursuant to the Consent Judgment are covered losses that defendants should have to pay based upon the relevant facts, the plain wording of the insurance contract, and the pertinent case law.

Defendants argue that the policy clearly does not cover corporate decisions to terminate particular retired employees' benefit plans. They claim that the policy only has very limited coverage when Bunker Hill and Gulf Resources acted in their capacities as fiduciaries of the plan. The defendants assert that the termination of the plan was not an act or omission in the management or administration of the Em-

ployee Benefit Plan, and therefore, the damages that were paid out pursuant to the Consent Judgment are not covered.

The policy, in its coverage and loss provision, provides in part that:

## III. COVERAGE

### A. LOSS PAYMENT AND CLAIMS MADE PROVISION:

> If claim or claims are first made against the *Insureds* ... during the *Certificate Period* for an act or omission (including a violation of the Employee Retirement Income Security Act of 1974), committed or alleged to have been committed by the *Insureds*, or by any person for whom the *Insureds* are legally responsible, in the management or administration of the *Employee Benefit Plan*, then the Underwriters will pay any *Loss* ... arising from such act or omission....

Memorandum in Support of Motion for Summary Judgment, filed Jan. 23, 1990, Exhibit A [Certificate CFL 13200 § II(A)] (emphasis in original).

Based upon this language of the policy, the defendants argue that the decision to terminate the retirees' medical benefits was not a decision which involved *the management or administration of the employee benefit plan or any violation of ERISA*, but was a decision to benefit the shareholders of the two corporations. Memorandum in Support of Motion for Summary Judgment, filed Jan. 23, 1990, at 7.

The defendant supports this argument by citing cases which have held that: (1) not every decision that a corporate employer makes is a fiduciary decision;[6] and (2) decisions regarding the structure, adoption, amendment or *termination* of an employees' benefit plan are not fiduciary in nature because the corporate employer wears two hats.[7] They also cite the Ninth Circuit case of *West v. Greyhound Corp.*, 813 F.2d 951,

---

**6.** *Trenton v. Scott Paper Co.*, 832 F.2d 806, 809 (3d Cir.1987).

**7.** *Amato v. Western Union Int'l*, 773 F.2d 1402 (2nd Cir.1985), *cert. dismissed*, 474 U.S. 1113,

106 S.Ct. 1167, 89 L.Ed.2d 288 (1986); *Hickman v. Tosco Corp.*, 840 F.2d 564, 566–67 (8th Cir. 1988); *Musto v. American Gen. Corp.*, 861 F.2d 897 (6th Cir.1988).

956 (9th Cir.1987) in which the court found that a corporation's decision to renegotiate or amend an unfunded contingent benefit plan is not a decision to be reviewed under the fiduciary standards set forth in ERISA. Memorandum in Support of Motion for Summary Judgment, filed Jan. 23, 1990, at 8–11.

In summary, the defendants argue that it is not a violation of ERISA to terminate what is perceived to be nonvested, unaccrued medical benefits in an effort to save money for the corporation, even though the decision may have collaterally affected the retirees' benefit plans. This decision was not an act or omission made by a fiduciary in the administration of a plan, and therefore, it follows that there can be no coverage under the policy.

In response to this motion, and in support of its own Motion for Partial Summary Judgment, plaintiffs argue that the policy's coverage is not so narrowly defined. They note the standard insurance law that the policy must be given its ordinary meaning, and if there is some question, that question must be resolved in favor of the insured. *Bonner County v. Panhandle Rodeo Ass'n,* 101 Idaho 772, 620 P.2d 1102 (1980). They read the policy as providing coverage for *any* act or omission *alleged* to have been committed in the management or administration of the employee plan, including *but not limited to,* violations of ERISA. They argue that there is no language that requires the act or omission to be a fiduciary act or omission, and thus, it does not matter what "hat" the corporation was wearing when it made its decision. Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiffs' Motion for Partial Summary Judgment, filed Feb. 20, 1990, at 5–6.

The plaintiffs argue that defendants must cover damages paid under the Consent Judgment, because now there is no way to determine what theories of liability, ERISA or others, if any, the *Bower* litigants would have prevailed on had the *Bower* suit been fully litigated. Plaintiffs claim that there are simply no factual or legal findings to consider in determining if the act or omission that the plaintiffs committed was a fiduciary act or omission done in the management or administration of the plan. In addition, they argue that in the complaint the *Bower* litigants alleged other acts or omissions in the administration or management of the plan, other than just a breach of a fiduciary duty.

The plaintiffs also argue that in order for certain claims to be covered, all they have to prove is *potential* liability, not *actual* liability. *Id.* at 8 (*citing Uniroyal, Inc. v. Home Ins. Co.,* 707 F.Supp. 1368, 1379 (E.D.N.Y.1988); *Terra Resources v. Lake Charles Dredging & Towing,* 555 F.Supp. 406, 407 (W.D.La.1981)). Therefore, they claim that even if no actual liability existed under ERISA, the fact that the complaint raised a question of *potential* liability for breach of fiduciary duty under ERISA, and the fact that Gulf extinguished that *potential* liability by settlement, this in and of itself should allow them to prevail on the coverage issue. The plaintiffs also discuss other potential claims that the *Bower* litigants raised in their complaint, for which Bunker Hill may have also been liable. Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, etc., filed Feb. 28, 1990, at 9–12.

In summary, plaintiffs' argument focuses on the fact that the *"Bower* actions have been settled and there are no factual or legal findings establishing those claims, if any, on which the *Bower* litigants would have prevailed, [therefore] the Underwriters cannot confine the potential claims to those clearly outside the scope of coverage." *Id.* at 13.

Based upon the above, plaintiffs argue that they should be granted partial summary judgment on the amount paid as attorney's fees to the *Bower* litigants, because they have proven, as a matter of law, that the defendants are obligated to indemnify. In support of their argument, they state that the defendants agreed to reimburse plaintiffs' attorney's fees and claim expenses which were incurred in the defense and settlement of the *Bower* actions. However, the defendants have refused to

pay the *Bower* litigants' attorney's fees award that was provided for in the consent judgment.

The plaintiffs also argue that the policy provides that the defendants are obligated to pay *any loss* that arises out of the act or omission committed or *alleged* to have been committed by the Insureds. In the policy, "loss" is defined as,

> the amount an *Insured* is legally liable to pay in satisfaction of claims insured hereunder, and shall include damages, judgments or settlements.
>
> "Loss" shall not include:
>
> (1) fines, penalties, or taxes ...
>
> (2) benefits paid or payable to a participant or beneficiary of the *Employee Benefit Plan* ...
>
> (3) contributions paid or payable to the *Employee Benefit Plan* ...
>
> (4) return of personal profit which the *Insured* has gained....

Memorandum in Support of Motion for Summary Judgment, filed Jan. 23, 1990, Exhibit A [Certificate No. CFL 13200, § I(F)] (emphasis in original).

The policy further defines multiple claims as:

> One or more claims based upon or arising out of the same act or omission or interrelated acts or omissions of one or more of the *Insureds* shall be considered a single claim. Any allowance by a court of reasonable attorney's fees and costs to a party making claim shall be deemed part of the original claim.

*Id.* at § II(F) (emphasis in original).

Plaintiffs argue that the attorney's fees that they were required to pay to the *Bower* litigants were, in and of themselves, claims for damages paid in satisfaction of the acts or omissions. The plaintiffs also note that the language in the policy defining "loss" does not specifically exclude attorney's fee awards pursuant to settle-

ments, and that in order to exclude a specific item from the policy coverage, the insurer must do it explicitly. Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, etc., filed Feb. 28, 1990, at 16 (*citing Starkville Mun. Separate School Dist. v. Continental Casualty Co.*, 772 F.2d 168, 170 (5th Cir.1985)). The defendant also cites authority for the propositions that attorney's fees are a reimbursable loss, *Starkville Mun. Separate School Dist. v. Continental Casualty Co.*, 772 F.2d at 170, and attorney's fees paid to the adverse party are a reimbursable loss, *Sokolowski v. Aetna Life & Casualty Co.*, 670 F.Supp. 1199, 1208–10 (S.D.N.Y.1987). Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, etc., filed Feb. 28, 1990, at 17–18. Based upon the foregoing, and the fact that the *Bower* complaints themselves alleged claims for attorney's fees, thus creating a potential risk of loss, the plaintiffs assert that they are entitled to a partial summary judgment on the attorney's fees issue.

The defendants, in their reply brief, respond by making this argument. In the Consent Judgment, the *Bower* litigants were awarded three things: (1) reinstatement of medical benefits; (2) $3,043,837.00 to cover the unpaid medical expenses during the suspension of the plan, and (3) their attorney's fees. Reinstatement of medical benefits is expressly excluded from coverage in Section I(F)(2) of the policy, as is the award for unpaid medical expenses due to the suspension. Therefore, the characterization of these damages, along with the fact that plaintiffs are not seeking to recover them, is clear evidence that the *Bower* suit was not about a covered act or omission.[8] In other words, if the covered acts were not sought by the *Bower* litigants, how can the attorney's fees incurred during the suit be recoverable? Reply Memorandum in Support of Defendant's Motion

---

8. It should be noted again that plaintiffs, during the hearing on these motions, conceded that under the policy there is no coverage for the reinstatement of medical benefits, and the unpaid medical expenses. However, plaintiffs do assert that a portion (approximately $110,-000.00) of the unpaid medical expenses was, in fact, damages paid for the emotional distress that the *Bower* litigants had suffered, and as such, this portion was covered by the policy as it was not specifically excluded. *See* Transcript on Hearing on Motions for Summary Judgment, filed Nov. 13, 1990, at 28–34.

for Summary Judgment and In Opposition to Plaintiffs' Motion for Partial Summary Judgment, filed Mar. 14, 1990, at 15–16.

Plaintiffs respond to this assertion by arguing that attorney's fees are a covered claim, even if the underlying cause of action is not covered by the terms of the policy. Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment, filed Mar. 28, 1990, at 3 (*citing Sokolowski v. Aetna Life & Casualty Co.*, 670 F.Supp. at 1208–10, and *Starkville Mun. Separate School Dist. v. Continental Casualty Co.*, 772 F.2d at 170).

Plaintiffs have only requested summary judgment in regard to the attorney's fees that were paid to the *Bower* litigants. They note that the question of coverage and reimbursement for the other damages, while not waived, are not the subject of their Motion for Partial Summary Judgment. They argue that defendants' Motion for Summary Judgment on all the claims cannot be granted because there remains disputed issues of material facts related to these other claims. In particular, they argue that the *Bower* litigants raised an issue in their complaints of whether or not Arthur Lennon, an employee of Bunker Hill, had misled the retirees that their medical benefits would continue as long as they received their pensions. Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment, filed Mar. 28, 1990, at 11.

Plaintiffs also note that because there is no question that the defendants had a duty to defend, the defendants, in order to absolve themselves of the duty to indemnify, would have to either seek a declaratory judgment that there was no coverage (which they have not done) or seek a factual· or legal adjudication that the claims were outside the coverage. Failure to seek one of these options would, therefore, ripen into a duty to indemnify. They carry this analysis one step further by stating that "the duty to indemnify must follow the duty to defend in those cases terminated by settlement rather than final judgment."

9. *See* Memorandum in Support of Motion for Summary Judgment, filed Jan. 23, 1990, at 6 n.

*Id.* at 10 (*citing Pacific Indem. Co. v. Linn*, 590 F.Supp. 643, 650 (E.D.Pa.1984)).

Applying this analysis to the facts, the plaintiffs argue that because the Consent Judgment does not provide any factual or legal findings with respect to what claims the *Bower* litigants prevailed on, it is now impossible to determine on what theories of liability, if any, the *Bower* litigants would have prevailed. Because the defendants had their opportunity to seek an adjudication absolving them of liability, before the claims were settled, they should be estopped from now asserting that the claims were outside of the terms of the policy. Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment, filed Mar. 28, 1990, at 10.

2. *Emotional Distress Damages Issue.*

During the hearing held on these motions, plaintiffs clarified their position on what portion of the $3,043,837.00, that was paid out for unpaid medical expenses, they were now claiming was covered by the policy. During arguments, plaintiffs noted that they were only seeking to recover that portion which represented damages paid to the *Bower* litigants for the emotional distress they suffered. In order to clarify this issue, the court requested that the parties file with the court additional briefing. On November 9, 1990, defendants filed their brief in opposition to plaintiffs' claim regarding emotional distress damages. On November 20, 1990, plaintiffs filed their response in support of this claim. Finally, on November 30, 1990, defendants filed their reply brief on this issue.

The defendants reassert their argument that there is simply no coverage under the policy for any of the claims, including this emotional distress damages claim, and that even if there were, the plaintiffs cannot recover because they materially breached the notice provision of the policy. In addition, the defendants note that they have reserved several other grounds upon which they could have moved for summary judgment on all the claims.[9]

4 (where defendants list these other grounds, including: plaintiffs' breach of the notice and

The defendants note that the amount in controversy on this issue is only $110,000.00. Defendants' Brief in Opposition to Plaintiffs' Claim Regarding Emotional Distress Damages, filed Nov. 9, 1990, at 6. In addition to the no-coverage argument, defendants assert that this money is not recoverable for three reasons. First, defendants argue that the *Bower* litigants were not seeking emotional distress damages in their claims against the plaintiffs. In addition, the defendants note that the United States Supreme Court has held that this type of damages is not recoverable under ERISA. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

Secondly, the defendants argue that Idaho law also does not provide for recovery of emotional distress damages in this context. *Brown v. Fritz,* 108 Idaho 357, 363, 699 P.2d 1371 (1985). Therefore, under Idaho law, any amount paid to the *Bower* plaintiffs for emotional distress damages was not legally justifiable compensation.

Finally, the defendants assert that the Consent Judgment does not provide a legal finding that emotional distress damages were warranted or even at issue. Defendants argue that the self-serving Consent Judgment, by itself, cannot create liability.

In their brief filed on November 20, 1990, plaintiffs argue that all of their claims are covered by the general insuring language of the policy. Plaintiffs clarify their argument that they only have to point to an alleged act or omission in the administration or management of the plan for coverage to exist, and that the *Bower* litigants had clearly made the necessary allegations.

Plaintiffs further assert that the emotional distress damages, which are estimated to be $110,000.00, are a covered "loss" under the policy. Plaintiffs' Memorandum Brief in Support of Claim Regarding Emotional Distress Damages, filed Nov. 20, 1990, at 11. In support of their argument, plaintiffs basically take the opposite view on each argument asserted by the defendants. They argue that the policy did cover emotional distress damages because:

> (1) the *Bower* plaintiffs *were* seeking emotional distress damages as part of their federal law claims against Gulf and Pintlar, (2) damages for emotional distress *were* recoverable under ERISA at the time they were alleged, and (3) the Consent Judgment provides a clear and unequivocal basis for supporting the claim for emotional distress damages.

*Id.* at 12 (emphasis in original).

### 3. *Notice Issue.*

In the alternative to the threshold coverage issue, the defendants argue that even if the court finds there is coverage under the policy, they are still entitled to summary judgment on all the claims because the plaintiffs failed to comply with the notice provisions of the policy; that is, they failed to provide timely notice of the pending claims. The parties have spent a considerable amount of time and effort arguing this issue. The court finds that its ruling on the coverage issue will be dispositive; therefore, the court will not address the notice issue.

### B. *Threshold Issue*

■ The threshold question that this court must address as it considers these cross-motions for summary judgment is, whether Certificate No. CFL 13200 provided coverage for the damages paid to the *Bower* litigants for (1) the emotional distress they suffered when their medical plan was terminated ($110,000.00), and (2) the amount (approximately $1.8 million) they paid in attorney's fees in attempting to get the plan reinstated. If the court finds that there is no coverage, then the collateral issues of adequate notice, policy exclusions, and whether these damages were "losses" as defined by the policy, are moot.

To determine whether the claims are covered by the policy, the starting point, naturally, is the policy itself. The general insuring language of Section II(A) of the policy provides that:

---

amendment provisions of the policy; plaintiffs' willful violations of ERISA which bars coverage under the policy; and plaintiffs' breach of the cooperation clause of the policy.)

If claim or claims are first made against the *Insureds* ... during the *Certificate Period* for an act or omission (including a violation of the Employee Retirement Income Security Act of 1974), committed or alleged to have been committed by the *Insureds*, or by any person for whom the *Insureds* are legally responsible, in the management or administration of the *Employee Benefit Plan*, then the Underwriters will pay any *Loss* ... arising from such act or omission....

Memorandum in Support of Motion for Summary Judgment, filed Jan. 23, 1990, Exhibit A [Certificate CFL 13200 § II(A)] (emphasis in original). This policy then, by its express terms, is a policy designed to cover the plaintiffs for their fiduciary acts or omissions in the *management and administration* of the benefit plan. In other words, the policy only covers the plaintiffs when they violate their fiduciary duties while managing or administrating the employees' medical benefit plan.

Having reviewed the entire record, the court finds that the "act or omission" in question is the plaintiffs' decision to terminate the medical benefit plan that covered the *Bower* litigants. All of the other claims of alleged misrepresentation and breaches of other non-fiduciary duties, are all derivative of this one act or omission. Therefore, the narrow question that the court must initially decide is whether the decision to terminate the plan was a decision made in the administration or management of the plan. The court finds that the defendants' position on this issue is well taken.

■ It is clear that corporate employers wear two hats when they make decisions which may affect their employees' medical benefit plans. *Amato v. Western Union Int'l,* 773 F.2d 1402, 1416–17 (2nd Cir.1985).

On the one hand, corporate employers make everyday business decisions for the benefit of their shareholders that are not controlled or regulated by ERISA. On the other hand, employers also can act as fiduciaries when and to the extent that they function as plan managers and administrators. It is in this latter role, that the employers' actions become regulated and controlled by ERISA[10]. *Id.*

The Ninth Circuit Court of Appeals recently addressed this issue in *Cunha v. Ward Foods, Inc.,* 804 F.2d 1418 (9th Cir. 1986). In *Cunha,* the employer had made a decision to terminate a contractual pension plan which obviously adversely affected the covered employees. In rejecting the employees' claim of breach of a ERISA-imposed fiduciary duty, the Ninth Circuit stated:

However, in this case, Ward [the employer] was not acting in connection with its fiduciary responsibilities as Plan administrator, but instead, was acting in its corporate capacity. The decision to terminate the Plan was a business decision that properly rested with Ward's corporate offices.... Because Ward was not acting as an administrator when making the decision to terminate the Plan, its actions, although clearly taken in its own best interests, did not constitute a breach of fiduciary duty.

*Id.* at 1432–33 (citations omitted).

Thus, the Ninth Circuit has recognized that ERISA does contemplate and take into account the fact that every decision an employer makes that affects the plan is not governed by the ERISA-imposed fiduciary standards. *See also Amalgamated Clothing & Textile Workers v. Murdock,* 861 F.2d 1406, 1419 (9th Cir.1988) (the decision to terminate a plan is a business decision and does not constitute a breach of fiduci-

---

10. 29 U.S.C. § 1002(21)(A) (1990) provides in part that:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting *management of such plan* or exercises any authority or control respecting *management or disposition of its assets,* (ii) he renders investment advice for a fee ... or (iii) he has

any discretionary authority or discretionary responsibility in the *administration of such plan.*

29 U.S.C.S. § 1002(21)(A) (Law. Co-op.1990) (emphasis added). Thus, it is clear from this language that every decision that an employer makes which has some effect on the employee benefit plan, is not necessarily a decision which is controlled by ERISA's fiduciary standards.

ary obligation); *West v. Greyhound Corp.*, 813 F.2d at 955–56 (9th Cir.1987) (*citing Sutton v. Weirton Steel Division of National Steel Corp.*, 724 F.2d 406, 410–11 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984)) (Congress has not prohibited an employer who is also a fiduciary from exercising its rights as an employer to renegotiate or amend unfunded contingent benefit plans); *Chait v. Bernstein*, 645 F.Supp. 1092, 1099 (D.N.J.1986) (the notion that an employer may act in its own interests in deciding to terminate a pension plan, and not solely in the interests of plan participants, is consistent with ERISA's general scheme for plan terminations as well as relevant ERISA case law).

The Third Circuit Court of Appeals, in *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir.1990), has also addressed this issue in a very precise and persuasive manner. At issue in the *Hozier* case was whether the decision by the employer to amend the severance plan was a decision made in the "administration" of the plan. The court first noted that when employers act as plan administrators, they assume fiduciary duties to the extent they function in that capacity, but do not assume fiduciary status to the extent they conduct business that is not regulated by ERISA. *Id.* at 1158. After detailing some of the background and development of ERISA, the court then found that administration decisions do not encompass decisions to amend a plan. The court states that "[v]irtually every circuit has rejected the proposition that ERISA's fiduciary duties attach to an employer's decision whether or not to amend an employee benefit plan." *Id.* at 1161. The court then cites numerous circuit cases, including the Ninth Circuit case of *Cunha v. Ward Foods, Inc.*, that have so held, and concludes that its search has not uncovered any federal court of appeals decisions to the contrary. Finally, the court holds that "an employer's decision to amend *or terminate* an employee benefit plan is unconstrained by the fiduciary duties that ERISA imposes on plan administration." *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d at 1162 (emphasis added).

As a fiduciary policy, Certificate No. CFL 13200 covered the acts or omissions, "including a violation of the Employee Retirement Income Security Act of 1974" that occurred during the administration and management of the plan. Therefore, the policy was designed to cover the corporate employers' fiduciary violations in the administration and management of the plan, and does not cover the everyday business decisions that an employer must make. The court finds that one such "business decision" that the plaintiffs made was the decision to terminate the medical benefit plan that covered the retired Bunker Hill employees. Because the plaintiffs were not acting as plan administrators or managers when they made the decision to terminate the plan, their actions, although clearly taken in its own best interests, did not constitute a breach of a fiduciary duty under ERISA. Accordingly, it follows that the claim for damages paid to the *Bower* litigants that the plaintiffs are now seeking to recover from the defendants are not covered under this fiduciary policy, because the act (the decision to terminate the plan) was not committed or alleged to have been committed in the management or administration of the Employee Benefit Plan. The decision to terminate the plan was a business decision made in the best interests of the employer, which also happened to have a collateral adverse effect on the interests of the retired employees.

C. *Application of the Summary Judgment Standard*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." U.S.C.S. Court Rules, Rule 56(c), Federal Rules of Civil Procedure (Law. Co-op 1987).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the non-moving party fails to make such a showing on any essential element of his case, "there can be no 'genuine issue as to any issue of material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2553.[11]

Moreover, under Rule 56, it is clear that an issue in order to preclude entry of summary judgment must be *both* "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) (*quoting First Nat'l Bank v. Cities Serv. Co., Inc.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). The Ninth Circuit cases are in accord. *See e.g., British Motor Car Distrib., Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir.1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

(1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

### D.  *Conclusion*

In applying this standard, the court finds that there are no disputed genuine issues of material facts that remain for the fact finder. The court further finds that the plaintiffs have failed to make a sufficient showing that there is coverage for either the emotional distress damages claim, or the attorney's fees claim.

Based on the foregoing analysis, the applicable standards under Rule 56, and the applicable and pertinent case law, the court finds that the plaintiffs have failed to meet their burden in establishing that there is coverage under the policy. Therefore, the defendants are entitled to summary judgment on all claims asserted by the plaintiffs.

## IV.  ORDER

Based upon the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that plaintiffs' Motion for Partial Summary Judgment, filed on February 20, 1990, should be and hereby is, DENIED in its entirety.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment, filed on January 19, 1990, should be and hereby is, GRANTED.

---

**11.**  *See also* Rule 56(e), which provides in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is an genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
U.S.C.S. Court Rules, Rules of Civil Procedure, Rule 56(e) (Law. Co-op.1987 & Supp.1990).