Filed 10/4/13  Mid-Century Ins. Co. v. Zamora CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (San Joaquin)

----

| | |
|---|---|
| MID-CENTURY INSURANCE COMPANY, | C069644 |
| Plaintiff, Cross-defendant and Respondent, | (Super. Ct. No. 39-2009-00222363-CU-IC-STK) |
| v. | |
| ROBERT ZAMORA et al., | |
| Defendants, Cross-complainants and Appellants. | |

In this action with cross-prayers for declaratory relief regarding the obligation of plaintiff Mid-Century Insurance Company (Mid-Century) to defend eight defendant car dealerships and their principal (to whom we will refer only collectively as defendants) in an underlying action for wage/hour violations of state and federal law, the trial court concluded potential coverage did not exist under Mid-Century's commercial general liability policy—in particular, its "Employee Benefit Liability" (EBL) endorsement—and therefore Mid-Century did not have any duty to defend defendants in the class action.

1

The trial court concluded the wage/hour class action arises from the *employment practices* of defendants and not the *administration of employee benefit plans* that the endorsement covers. It accordingly entered judgment in October 2011 in favor of Mid-Century (and against defendants on their cross-complaint), issuing a declaration to this effect. Defendants filed a timely notice of appeal.[1]

The gist of defendants' arguments on appeal rests on their characterization of their alleged conduct in the underlying action as being deliberate but nonetheless negligent and lacking any intent to injure the class. They claim this presents the possibility of coverage under the EBL endorsement for acts of negligence, under well-settled law. This entirely misses the point of the trial court's ruling that the employment practice of wage-setting, even if it has a proportionate effect on the preset calculation of benefits based on the rate of wages, is not negligent conduct having any nexus to the administration of employee benefit plans.[2] We therefore will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties submitted this matter to the trial court on stipulated facts and exhibits. We draw our facts from this source.

---

[1] Preparation of the record and briefing thereafter took 16 months.

[2] Indeed, defendants do not even address the question of whether this interpretation of the endorsement by the trial court is correct until their reply brief, which forfeits the issue entirely. (*Sourcecorp, Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061, fn. 7.) The fact that we exercise de novo review does not mean that the trial court is " 'a potted plant' " to be disregarded. (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.) Even in their reply brief, defendants do not address the trial court's ruling that the conduct alleged in the underlying class action does not have any nexus with benefit administration. They have consequently conceded that their challenged actions regarding the *wages* of their mechanics were not negligent conduct with any nexus to the *benefit* administration.

2

This protracted litigation stems from these few words in the coverage section of the EBL endorsement, which adds the following coverage to the main policy's general liability coverage for property damage or bodily injury: "d. damages includes those damages sustained by your[3] [prospective, current, or] former employee . . . caused by your negligent act or omission, or [¶] e. those damages caused by any other person for whose acts you are legally liable in the 'administration' of your 'Employee Benefit Programs' as defined below." The covered benefit programs are group life and health insurance; profit sharing, pension, and stock subscription plans; workers' compensation, unemployment insurance, social security, and disability; and travel, savings or vacation plans. The policy definition of administration includes counseling employees about the plans; interpreting the plans; maintaining plan records; and processing plan enrollments, terminations, and cancellation.

Mid-Century issued identical commercial general liability policies to defendants, all of which included the EBL endorsement quoted above. The portion of the premium allocated for general liability with EBL coverage was about 2 percent of the total premium.

In March 2008, Jose Ontiveros filed the underlying complaint in federal court.[4] As summarized in Mid-Century's brief, the most recent pleading alleges defendants did

---

[3] *Id est*, the named insured defendants.

[4] Plaintiff Ontiveros filed two subsequent amended pleadings in June and November 2008. After defendants answered, the federal court granted stays of the action for mediation, an indefinite stay at the request of the parties from July 2010 to July 2012 pending trial in the present matter, and has recently stayed the action in April 2013 pending the appeal of a defendant from its order refusing to compel individual arbitration. While the matter is stayed pending the federal appeal, the federal trial court has taken a motion for class certification off calendar. (*Ontiveros v. Zamora* (E.D.Cal. Apr. 25, 2013, No. Civ. S-08-567 LKK/DAD) 2013 WL 1785891, *1, *7, 2013 U.S.Dist. Lexis 59621.)

not comply with multiple Labor Code sections, wage orders, and Department of Labor Standards and Enforcement regulations, which resulted in an underpayment of wages for all hours worked and misstatements in the records of these hours and wages. The pleading also alleges that the proposed class suffered damage in the form of reduced social security benefits as a result of these violations. Although put on notice of these improprieties, defendants refused to remedy them. To quote an order of the federal trial court in the underlying action, "The gravamen of plaintiff's complaint is that auto mechanics employed by defendant[s] . . . are paid on what is essentially a piece[-]rate system, one that leaves them unpaid for time when they are not working on a repair job, but are still required to be at work." (*Ontiveros v. Zamora* (E.D.Cal. Feb. 14, 2013, No. Civ. S-08-567 LKK/DAD) 2013 WL 593403, *1, 2013 U.S.Dist. Lexis 20408 [order denying motion to compel individual arbitration].) In support of the pending motion for class certification, six declarants all averred that their claims against defendants were based solely on a failure to pay them for all the hours that they worked.

Defendants submitted a copy of the complaint to their insurance broker in March 2008 by copying him on a forwarded e-mail from their attorney, requesting that it "be submitted to insurance companies for the company" (without further specification of a particular company). The broker submitted a claim to Gotham Insurance Company, with whom defendants had a policy for employment practices liability. When defendants inquired about the status of the claim in May 2008, the broker assured them he would look into the matter, reminding them the claim was filed with Gotham under the employment practices policy and not Mid-Century. Gotham denied coverage in August 2008 on the ground that wage issues come within an exclusion of coverage. In April 2009, the broker informed defendants that he would submit a claim to Mid-Century "to see if they *can find anything* in our policy language that *would at least trigger* defense." (Italics added.) Mid-Century sent a receipt acknowledging the claim in April 2009.

4

Mid-Century accepted defense of the putative class action with a reservation of rights in July 2009, informing defendants it would promptly be filing this action because it did not believe the underlying action involved any conduct coming within the coverage of the policy or the EBL endorsement; as it construed the pleadings, the conduct was intentional rather than negligent and did not involve the administration of benefits. Within two weeks, Mid-Century filed the present action. Defendants cross-complained in August 2009. Before trial, defendants unsuccessfully moved to stay the present action pending the outcome of the underlying matter, and for summary adjudication of their right to independent counsel in the underlying action (Civ. Code,§ 2860) and of Mid-Century's duty to defend.

In their arguments on submission of the matter to the trial court, the parties demonstrated their divergent views of the "duck-rabbit" (*Perry v. Robertson* (1988) 201 Cal.App.3d 333, 335, fn. 1) that the EBL endorsement represents to them. Mid-Century asserted, "[A]s the Court knows, . . . the [EBL] Endorsement [attaches only] where there is a negligent act or a negligent omission by the insure[d] that . . . causes some kind of miscalculation of the employee benefits that are provided to the particular employees in this case. And that is not the case here. [¶] There isn't any allegation of miscalculation"; "the coverage promise here is limited to negligent acts and negligent omission in the calculations of the employee benefits, essentially. And there's no question that that two[-]page endorsement . . . is intended to apply to anything other than employee benefits. [¶] *That is the caption at the top of the document*" (italics added); and "[it] talk[s] about both the Defendant and the administrators so that . . . if [the latter] make some mistake and . . . the employer gets sued because it didn't provide the employee with the right calculation of their employee benefits, the employer is protected for that kind of claim. So it's a very narrow coverage for negligent acts and negligent

omissions in the employee benefits area and the administration of these employees' benefits plan."

Defendants, on the other hand, focused on the "or" between the two clauses in the EBL endorsement to argue that under the first clause "Mid-Century agreed to defend and indemnify suits where . . . damages include those damages sustained by an employee and caused by a negligent act or omission. . . . [N]o causal nexus to Employee Benefit Program." Defendants then devoted the rest of their argument to the point that "the question is not whether the Defendants deliberately made a decision to adopt a certain pay plan, but the question is whether the decision was made negligently or with intent to harm the Ontiveros' plaintiffs," arguing the underlying complaint included conduct coming within the former and thus within the coverage as defendants framed it.

As noted above, the trial court interpreted the EBL endorsement in the same manner as Mid-Century, finding indicia supporting this interpretation in the small amount of premium allocated to general liability coverage carrying the EBL endorsement, the availability of other insurance covering employment practices (even though, as we note, this excluded this particular type of claim), and the conduct of the parties in looking initially to this other insurance before tendering the claim to Mid-Century with the *hope* that coverage existed. As the underlying action did not involve any conduct with a nexus to the administration of employee benefit plans (a point, as we have noted, that defendants do not contest on appeal), the court issued a declaration in favor of Mid-Century and against defendants on the duties to defend and indemnify, and (in the absence of any duty to defend) found that defendants were not entitled to independent counsel.

## DISCUSSION

To reiterate, defendants' arguments regarding whether their conduct can come within coverage for negligent acts in the abstract (for which reason their briefing and oral

6

argument aim their primary focus on *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 (*Montrose*)) are irrelevant if the EBL endorsement covers only negligent acts with a nexus to administering employee benefits. Limiting our focus to this issue, we find the trial court's adoption of this interpretation was correct and consequently do not reach the remainder of defendants' arguments (including their contentions regarding the date on which the duty to defend arose or their entitlement to independent counsel).

"The construction of the policy before us is one of law because it is based on stipulated evidence and the terms of the insurance contract. We thus are not *bound* by the trial court's interpretation" and review the matter de novo. (*Royal Globe Ins. Co. v. Whitaker* (1986) 181 Cal.App.3d 532, 536, italics added.) The insured bears the initial burden of demonstrating that a claim comes within the scope of a policy's coverage. (*Id*. at p. 537.) If an insured demonstrates that there is a potentially covered claim in an action against the insured, whether based on the allegations themselves or extrinsic evidence, then the insurer has a duty to defend the action in its entirety, from the date of the tender of the claim to the conclusion of the action (or a point at which facts determine that coverage does not exist), even if ultimately its duty to indemnify is not triggered. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 49; *Montrose, supra*, 6 Cal.4th at p. 295.) It is because insureds consider the duty to defend to be of at least equal importance as indemnification that we are "solicitous" of this expectation. (*Montrose*, at pp. 295-296.) An insurer, on the other hand, must affirmatively demonstrate the absence of *any* potential for coverage in order to prevail. (*Id*. at p. 300.)

To the extent defendants address the issue of interpreting the EBL endorsement in their briefing at all, it again rests on the use of "or" between the two coverage clauses (as they argued below). They suggest this disjunctive posits a distinction between "damages

. . . caused by [the insureds'] negligent act or omission" and damages for which insureds are vicariously liable in the administration of employee benefits.

We do not dispute that the syntax of this provision is not the best. But, as Mid-Century properly points out, the provision appears in an endorsement, the title and subject of which is *administering employee benefits*. As a result, it is unreasonable as a matter of law to interpret the first clause as relating to negligence *unconnected with* administering employee benefits, regardless of how poorly the language of the EBL endorsement articulates this. Its cumbersome structure *in context* accordingly promises to provide *EBL coverage* for "damages . . . caused by [the insured's] negligen[ce] . . . or . . . damages caused by any other person for whose acts [the insured is] legally liable," the "or" thus intending to demonstrate coverage for both types of *liability* (direct and vicarious), *not* two types of unrelated conduct (negligence in the abstract, and damages incurred in the course of benefit administration). No matter how many times defendants insist that negligence with a nexus to benefit administration is unnecessary, they do not give any cogent basis for reading the first clause more broadly than the endorsement in which it appears.

The parties cite only two cases involving analogous language from federal authority. Although the issue in *Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.* (S.D. Ohio 2007) 521 F.Supp.2d 661 is otherwise inapposite, it indicates another reason why policies might commonly contain a disjunctive between an insured and those for whom the insured has vicarious liability. Under the better-worded policy at issue in that case, the insurer agreed to " 'pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act . . . of the insured, or of any other person for whose acts the insured is legally liable. The negligent act . . . must be committed in the "administration" of your "employee benefit program." ' " (*Id*. at p. 671, underscoring omitted.) Because an exclusion in that policy for malicious or criminal conduct applied

8

only to the insured and not to those for whom the insured was vicariously liable,[5] the federal trial court found coverage for malfeasance on the part of a third party administrator.  (*Id.* at p. 674.)  Thus, the disjunctive exists not only to expressly embrace vicarious as well as direct liability, but to distinguish exclusions between the two.

Of some relevance on the issue that defendants have abandoned, *Gulf Resources & Chemical Corp. v. Gavine* (D. Idaho 1991) 763 F.Supp. 1073 involved another better-phrased policy for fiduciary violations in administering benefit plans that covered " 'claims [ . . . ] made against the Insureds . . . for an act [ . . . ] committed [ . . . ] by the Insureds, or by any person for whom the Insureds are legally responsible, in the management or administration of the Employee Benefit Plan . . . .' " (*Id.* at p. 1076, italics omitted.)  The court concluded that the employer's " 'business decision' " to end medical benefits for retirees was not a decision involving the *administration* of the plan, because it related to the interests in managing the business and not the plan, which is akin to the choice about wages in the present case.  (*Id.* at p. 1082.)

As the treatment in these cases indicate, it is not reasonable merely on the basis of an "or" between the clauses to import negligence coverage utterly unrelated to the subject of the EBL endorsement, and we have a basis for agreeing with the trial court that wage decisions do not involve the administration of benefit plans for employees.  We thus agree with the trial court's interpretation of the EBL endorsement, based solely on the language of the EBL endorsement.  As a result, we do not need to respond to the conclusory arguments defendants raise regarding the propriety of inferring this result from either the small amount of premium attributable to coverage (e.g., *Fidelity & Deposit Co. v. Charter Oak Fire Ins. Co.* (1998) 66 Cal.App.4th 1080, 1086 [small

---

[5] The policy at bar has a similar exclusion, which applies to both the insured and others involved in benefit administration.

amount of premium indicates that insured is limited to particular business entity and not all ventures of parent company]), or the conduct of the parties in seeking coverage under the policy at bar only as a last resort.

## DISPOSITION

The judgment is affirmed.  Plaintiff and Cross-defendant Mid-Century shall recover its costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                BUTZ_____, J.


We concur:


_____RAYE_____, P. J.


_____HULL_____, J.

10