620 P.2d 1102

BONNER COUNTY, a political subdivision of the State of Idaho, and Bonner County Fair Association, Plaintiffs–Respondents,

v.

PANHANDLE RODEO ASSOCIATION, INC., Defendant–Respondent,

and

Sandpoint Lions Club, Inc., and Royal–Globe Insurance Company, Defendants–Appellants.

No. 13253.

Supreme Court of Idaho.

Dec. 15, 1980.

James P. Connelly and Meriwether D. Williams, of Winston & Cashatt, Spokane, Wash., Roger M. Hanlon, Sandpoint, for defendants–appellants.

Stephen F. Smith, Sandpoint, Cooke & Lamanna, Priest River, for defendant–respondent Panhandle Rodeo Ass'n Inc.

E. L. Miller of Miller & Knudson, Coeur d'Alene, for plaintiff–respondent, Bonner County.

DONALDSON, Chief Justice.

This is an appeal from a declaratory judgment action in which plaintiffs–respondents Bonner County and Bonner County Fair Association (Bonner) sought an adjudication that defendants–appellants Sandpoint Lions Club, Inc. (Sandpoint Lions) and Royal–Globe Insurance Company (Royal–Globe) and defendant–respondent Panhandle Rodeo Association, Inc., (Panhandle) were obligated to defend and indemnify Bonner in a personal injury action filed against Bonner. The underlying action had been brought by a woman who suffered personal injuries in a fall from a bleacher seat on September 11, 1976, while attending a rodeo jointly sponsored by Sandpoint Lions and Panhandle on the premises provided by Bonner. Panhandle filed a cross-claim in the declaratory judgment action, seeking an adjudication that Sandpoint Lions and Royal–Globe were obligated to defend and indemnify it in the same personal injury action.

Beginning in 1974, Sandpoint Lions and Panhandle entered into a joint venture agreement to jointly sponsor a rodeo. Each year thereafter they entered into a lease agreement with Bonner for a nominal rental of the Bonner County Fairgrounds. In 1976 negotiations began regarding the annual lease, which contained, as usual, a provision which forms the center of this controversy:

#### "INSURANCE

"The tenant shall provide and procure extended insurance liability coverage in an amount of at least $250,000.00 per person and $500,000.00 aggregate, and Third Party property coverage of $250,-000.00, and shall present proof of the same by filing a copy of the insurance policy with the landlord at least ten (10) days prior to the rodeo performance dates. *The tenant shall hold harmless the landlord for any liability incurred as a result of the rodeo performances,* and the landlord shall have no financial responsibility for any debt or obligation incurred by the tenant." (emphasis added)

Pursuant to the requirements of this provision, Royal–Globe issued a liability policy naming Sandpoint Lions as the insured and providing liability coverage for certain occurrences during the rodeo. The policy had attached endorsement no. 4 which provided:

"*ADDITIONAL INSURED ENDORSE-MENT*

It is agreed that the 'persons insured' provision is amended to include as an insured any person or organization (public or private), but only with respect to liability arising out of:

1. The ownership, maintenance or use of premises or other facilities leased, loaned or donated to the named insured;

2. The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, marquees, street banners or decorations and similar exposures by the named insured: And subject to the following additional exclusions: this insurance does not apply:

1. To any occurrence which takes place after the named insured ceases to have use of said premises, facilities or above items;

2. To structural alterations, new construction or demolition operations performed by or on behalf of the person or organization as described above.

3. To liability arising out of the sole negligence of the additional insured hereunder."

Attached endorsement no. 13 provided: "The company will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance, shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies . . ."

Endorsement no. 13 also provided that the insurance did not apply "to liability of the indemnitee resulting from his sole negligence."

A copy of this 1976 insurance policy was not filed with Bonner as required by the lease agreement. Historically, Sandpoint Lions instead filed a Certificate of Insurance, but never the policy itself. In line with this past practice, but prior to consummation of the lease agreement, Bonner received a photostatic copy of a Certificate of Insurance dated July 14, 1976. Bonner expressed dissatisfaction with a photocopy, but subsequent telephone communication with the insurance agent in Illinois brought assurance that the photocopy was a true and correct copy and that an original would be forthcoming. Thereafter, the lease agreement was signed on September 7, the rodeo was held on September 11 and 12, and sometime following, Bonner received an original Certificate of Insurance dated November 5, 1976.

Both photocopy and original of the 1976 certificate contained language stating that the certificate was informational only and that an underlying policy controlled the coverage and limits of liability. However, both photocopy and original indicated that there was insurance covering "contractual blanket written agreements." Additionally, the July 14 photocopy stated that it was issued at the request of "Bonner County State of Idaho" and provided:

"Provisions of the policy apply to the annual 'Sandpoint Lions Club Panhandle Rodeo,' September 11th and 12th, 1976."

The November 5 original stated that it was issued at the request of "Sandpoint Lions Club Panhandle Rodeo Washington" and provided:

"Provisions of the policy apply to activities of the Sandpoint Lions Club and their rodeo."

The personal injury action was filed against Bonner. Bonner tendered the defense to Panhandle, Sandpoint Lions and Royal–Globe. Panhandle tendered the defense of the action to Sandpoint Lions and Royal–Globe. All tenders were refused; Bonner filed the declaratory relief action in which Panhandle cross–claimed.

Following trial in the declaratory action, the district court made the following conclusions pertinent to this appeal:

1. Sandpoint Lions and Panhandle, under the indemnity language in the lease agreement, were responsible to indemnify Bonner from any liability arising out of the operation of the rodeo.

2. Bonner and Panhandle both came under insurance coverage as additional in-

sureds pursuant to endorsement no. 4 of the policy.

3. Royal–Globe and Sandpoint Lions, because of the omission of the sole negligence exclusion on the 1976 Certificate of Insurance, were estopped from denying coverage;

4. Royal–Globe was estopped from denying coverage to Panhandle as an additional insured.

5. Royal–Globe was liable for the indemnification and defense of Bonner and Panhandle in the underlying action.

6. Awaiting the verdict of the underlying personal injury action before deciding the declaratory judgment action was unnecessary.[1]

Attorney fees were granted Bonner and Panhandle under I.C. § 41–1839 for work spent on the instant action, but not on the pending injury action. Sandpoint Lions and Royal–Globe appeal.

■ The first issue presented is whether the indemnity language in the lease agreement entered into with Bonner requires Sandpoint Lions[2] to indemnify Bonner for liability arising out of Bonner's own negligence. The indemnity language says: "The tenant shall hold harmless the landlord for any liability as a result of the rodeo performances...." The language could not be more clear. We agree with the district court's conclusion as to Sandpoint Lions' responsibility to indemnify Bonner from any liability arising out of operation of the rodeo, including that which might arise out of the underlying personal injury action.

In so agreeing, we are not unmindful of the general policy as articulated in *United States v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), that "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence...." *Id.* at 212, 90 S.Ct. at 885. However, there are several reasons which cut against this policy in the instant case. First, the indemnification clause contains the "hold harmless" language which, although not talismanic,[3] is nonetheless indicative of a specific intent to encompass indemnification for the indemnitee's negligence. Second, the clause obligates the tenant to hold harmless the landlord for *any* liability incurred as a result of the rodeo. There are no express exceptions to this broad mandate and there is no accompanying qualifying or limiting language. Third, the indemnity clause directly follows a specific provision for insurance. Clearly, this is indicative of an intent to place the onus of indemnification upon the tenant by requiring him to purchase insurance to fund the indemnity. Fourth, and finally, the lease agreement is supported by nominal consideration—one dollar only. This is not the case wherein there is a large disparity in bargaining power between parties. Rather, this is a situation in which a county, in the public interest, has made available to civic organizations its fairground facilities for a nominal sum with but the obvious requirement that it be held harmless in the event of mishap. Certainly an explicit reference to indemnification for the indemnitee's negligence would be dispositive; but, such explicit reference is not required. *See Gibbs v. United States*, 599 F.2d 36 (2d Cir. 1979) for discussion and application of *Seckinger, supra*. Thus, we find no error in the district court's conclusion that Sandpoint

1. The underlying personal injury claim against Bonner was fully settled and compromised prior to this appeal and timeliness of the declaratory action is not an issue here.

2. Panhandle has admitted that under the lease it is responsible to Bonner to indemnify Bonner from any liability arising out of operation of the rodeo and is not an issue here.

3. "We specifically decline to hold that a clause that is intended to encompass indemnification for the indemnitee's negligence must include an 'indemnify and hold harmless' clause or that it must explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence. Thus ... we assign no talismanic significance to the absence of a 'hold harmless' clause.... Contract interpretation is largely an individualized process, with the conclusion in a particular case turning on the particular language used against the background of other indicia of the parties' intention." *United States v. Seckinger, supra* at 213, n. 17, 90 S.Ct. at 886, n. 17.

Lions hold harmless Bonner for any liability of Bonner including Bonner's own negligence.

The next issue is whether the exclusionary clauses for sole negligence as found in the underlying policy exclude coverage to Bonner and additional insureds. We find that the clauses do not exclude coverage for two reasons. One, the policy itself, disclosing the exclusions, was never issued to Bonner. And two, most importantly, the certificate, the policy and its endorsements, specifically endorsement no. 13, all indicate that there is coverage for underlying written contractual agreements. The written contractual agreement relevant here, the lease agreement between Bonner and Sandpoint Lions, as previously pointed out, provides for indemnity for any liability, including liability resulting from Bonner's sole negligence. The very object of the contract is for this extended coverage. Certainly, an insurance company must be held to know the object of the contractual agreement which it is insuring.

The rule in Idaho is that "in the absence of ambiguity, contracts for insurance must be construed as any other and understood in their plain, ordinary and proper sense, according to the meaning derived from the plain wording of the contract." *Casey v. Highlands Insurance Co.*, 100 Idaho 505, 509, 600 P.2d 1387, 1391, *quoting Corgatelli v. Globe Life & Accident Insurance Co.*, 96 Idaho 616, 533 P.2d 737 (1975) (Donaldson, J., dissenting opinion). However, it is fundamental that not only are insurance contracts strictly construed against the drafter, *Linscott v. Rainier National Life Insurance Co.*, 100 Idaho 854, 606 P.2d 958 (1980); *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Insurance Co.*, 95 Idaho 501, 511 P.2d 783 (1973); *Stephens v. New Hampshire Insurance Co.*, 92 Idaho 537, 447 P.2d 14 (1968), but also where there is ambiguity in interpreting insurance exclusions, any doubt must be resolved against the insurer. *Farmers Insurance Group v. Sessions*, 100 Idaho 914, 607 P.2d 422 (1980), *citing Abbie Uriguen Oldsmobile Buick, Inc. v. United States, supra*, and *Stephens v. New Hampshire Insurance Co., supra*. Moreover, the converse of

*Casey* is applicable, that where there is ambiguity, the court is not confined to the wording of the contract, but should consider extrinsic matters such as the intent of the parties, the purpose sought to be accomplished, the subject matter of the contract, and circumstances surrounding the issuance of the policy. *See Seeburg Corporation of Delaware v. United Founders Life Insurance Company of Illinois*, 82 Ill.App.3d 1034, 38 Ill.Dec. 272, 403 N.E.2d 503 (1980). This Court has also said:

> "It is a long established precedent of this Court to view insurance contracts in favor of their general objectives rather than on a basis of strict technical interpretation of the language found therein. Where language may be given two meanings, one of which permits recovery and the other does not, it is to be given the construction most favorable to the insured. Stated somewhat differently, an insurance contract is to be construed most favorably to the insured and in such a manner as to provide full coverage for the indicated risks rather than to narrow protection. This Court will not sanction a construction of the insurer's language that will defeat the very purpose or object of the insurance." *Erikson v. Nationwide Mutual Insurance Company*, 97 Idaho 288, 292, 543 P.2d 841, 845 (1975).

*Citing Corgatelli v. Globe Life and Acci. Ins. Co.*, 96 Idaho 616, 533 P.2d 737 (1975); *Rollefson v. Lutheran Brotherhood*, 64 Idaho 331, 132 P.2d 758 (1942); *Mayflower Ins. Exchange v. Kosteriva*, 84 Idaho 25, 367 P.2d 572 (1961); *Shields v. Hiram C. Gardner, Inc.*, 92 Idaho 423, 444 P.2d 38 (1968); *Lewis v. Continental Life and Acci. Co.*, 93 Idaho 348, 461 P.2d 243 (1969); *Toevs v. Western Farm Bureau Life Ins. Co.*, 94 Idaho 151, 483 P.2d 682 (1971); *see Nielson v. Provident Life and Accident Insurance Co.*, 100 Idaho 223, 596 P.2d 95 (1979).

Accordingly, we find, under the facts before us, the ambiguous circumstance in which a policy has been issued purportedly providing coverage but with exclusionary provisions which, if applied, would narrow that coverage to "defeat the very purpose or object of the insurance." *Erikson, supra*. The conflict must be re-

solved against the insurer. We find no error in the district court's conclusion that Sandpoint Lions and Royal–Globe may not deny coverage based upon a sole negligence exclusion.

■ The district court also held that Panhandle was an additional insured under the policy. As noted above, the rule in Idaho is that ambiguity is resolved against the insurer. Here, again, there is ambiguity. The certificate makes reference to Panhandle and the policy itself, in the additional insured endorsement no. 4, *supra*, is certainly susceptible to the interpretation that Panhandle is covered. We find no error in the court's finding that the insurance company may not deny coverage.

■ The appellants next allege as error the admitting of extrinsic evidence for the purpose of interpreting the insurance contract. As previously discussed, in the presence of ambiguity, the trial court may step outside the four corners of the contract and consider other indicia such as intent, purpose, subject matter, surrounding circumstances and so forth. Ambiguity being present, the district court did not err in admitting extrinsic evidence.

■ The final issue on appeal is whether I.C. § 41–1839 [4] permits recovery of attorney fees by Bonner and Panhandle. Appellants argue that the statute only applies to first party insurance contracts where an insured is suing his own insurer on the policy for a liquidated sum supported by a proof of loss. We do not agree. This section applies to *any* person who has a claim under the policy, including additional insureds such as Bonner and Panhandle. *See Linscott v. Rainier National Life Insurance Company, supra* (parent beneficiaries entitled to fees under § 41–1839; fees actually awarded under punitive theory to avoid duplication); *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977) (bailors

entitled to fees in suit against warehouse and its surety); *see also Associates Discount Corporation of Idaho v. Yosemite Insurance Company,* 96 Idaho 249, 526 P.2d 854 (1974) ("under I.C. § 41–1839, any person who has a claim under a policy of insurance and who furnishes proof of loss as provided in the statute may recover attorney fees . . .").

■ Appellants also argue that an award of attorney fees pursuant to I.C. § 41–1839 is not appropriate because no "proof of loss" was or could be furnished. The district court found, and we agree, that the insurance company, having rejected the tender of defense made to it by Bonner, in effect denied any liability as the insurance carrier and thereby waived any requirement that proof of loss be furnished as a prerequisite to recovery of attorney fees pursuant to I.C. § 41–1839. *Martin v. Argonaut Insurance Company,* 91 Idaho 885, 434 P.2d 103 (1967). Along this line, this Court has recently commented: "In the case of an insurance company which initially refuses to pay a valid claim when liability under the policy is later established, the plaintiff may be entitled to an award of attorney fees under I.C. § 41–1839. . . ." *Linscott v. Rainier National Life Insurance Company, supra,* 100 Idaho at 860, 606 P.2d at 964.

Judgment affirmed. Award of attorney fees at district court level affirmed. Costs on appeal to respondents. Attorney fees on appeal to respondents.

SHEPARD, McFADDEN and BISTLINE, JJ., concur.

BAKES, J., concurs in the result.

---

4. I.C. § 41–1839 provides in pertinent part:

"Allowance of attorney fees in suits against insurers.–(1) Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action."