# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48379

ERICK PENA,

   Plaintiff-Appellant,

v.

VIKING INSURANCE
COMPANY OF WISCONSIN,

   Defendant-Respondent.

Boise, June 2021 Term

Filed: February 1, 2022

Melanie Gagnepain, Clerk

Appeal from the District Court of the Sixth Judicial District of the
State of Idaho, Bannock County. Javier Gabiola, District Judge.

The decision of the district court is <u>reversed</u>; judgment for Respondent is
<u>vacated</u>.

Gordon Law Firm, Inc., Idaho Falls, attorneys for Appellant. Brent Gordon
argued.

Betts, Patterson & Mines, P.S., Seattle, Washington, attorneys
for Respondents. Matthew Munson argued.

---

BEVAN, Chief Justice.

This appeal arises from a dispute regarding underinsured motorist ("UIM") coverage. Erick Pena filed a declaratory action against Viking Insurance Company of Wisconsin ("Viking"), alleging the automobile insurance policy he purchased was illegal because it provided illusory minimum limits of UIM coverage. Pena then filed a motion for summary judgment asking the court to declare that the UIM coverage was illusory. Viking filed a cross-motion for summary judgment, arguing that the policy was not illusory because it provided tangible benefits to a group of insured persons and that the offset provision in the policy complied with Idaho public policy. The district court granted Viking's motion for summary judgment. Pena timely appealed. We reverse the district court's judgment based on our determination that Viking's minimum limits UIM policy offered illusory coverage.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pena contracted to purchase automobile insurance from Viking (the "Policy"). Pena was covered for bodily injury liability insurance as well as uninsured motorist ("UM") coverage. He also elected to purchase UIM coverage. Pena chose limits of $25,000 per person and $50,000 per accident for each of the three coverages, paying a separate premium for each. Pena also purchased medical coverage that paid for certain medical and related benefits without regard to fault.

In September 2016, Pena was injured in a car accident caused by Dominic Baker in a vehicle owned by Renae Baker. Renae Baker was insured by State Farm under a policy with $25,000 of liability insurance, which paid its policy limits to Pena. Viking also paid its policy limit of $5,000 for Pena's medical care.

In March 2018, Pena presented a UIM claim to Viking, stating his damages exceeded the $25,000 he received from State Farm. Viking denied Pena's claim, asserting that Baker's vehicle was not an underinsured motor vehicle as defined by the Policy and that Viking had a right to offset Pena's recovery of $25,000 from Baker against the $25,000 underinsured motorist limits provided by the Policy.

The relevant policy provisions on which Viking relied in denying Pena's claim are set forth in an endorsement titled "**UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT – IDAHO**" (bold and capitalization in original) which provides:

> **We** will pay for damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be caused by a **car accident** and result from the ownership, upkeep or use of an **underinsured motor vehicle**.[1]

The endorsement defines "**Underinsured motor vehicle**" as "A **motor vehicle** to which a **bodily injury** liability bond or policy applies at the time of the **car accident** providing **bodily injury** liability limits less than the limit of liability for this coverage." The Policy then provides that an "**Underinsured motor vehicle**" does not mean a vehicle:

> (A) Insured by a **bodily injury** liability bond or policy at the time of the **car accident** but which provides **bodily injury** limits of liability less than the minimum **bodily injury** liability limits that comply with the financial responsibility law of the policy **state**.
>
> . . . .

---

[1] Some words appear in bold in the original policy. The bolded words are specifically defined in the policy itself.

The endorsement also explains the amounts payable under UIM coverage:

**Limits of Liability**

(1) The **bodily injury** limit for "each person" is the maximum limit for all claims by all persons for damages from **bodily injury** to any one person for damages from **bodily** injury to any one person, including all spousal claims, claims for care and loss of services, loss of companionship, loss of society and loss of consortium.

. . . .

Any amounts payable under this part will be reduced by the following:

(1) Any payments made by or on behalf of the owner or operator of the **underinsured motor vehicle**. Also any payment made by or on behalf of any other person or organization which may be legally liable.

(2) Any payments made or payable because of **bodily injury** under any workers' compensation law or disability benefits law or similar law.

. . . .

No one will be entitled to duplicate payments under this policy for the same elements of damages.

**We** will reduce the **insured person's** total damages by any amount available to that **insured person**, under any **bodily injury** liability bonds or policies applicable to the **underinsured motor vehicle** that such **insured person** did not recover as a result of a settlement between that **insured person** and the insurer of the **underinsured motor vehicle**. However, any reduction of the **insured person's** total damages will not reduce the limit of liability for this coverage. This reduction shall not apply if **we** advance payment to the **insured person** in an amount equal to the tentative settlement with the insurer of the **underinsured motor vehicle**.

On February 13, 2020, Pena filed a declaratory action against Viking, alleging the UIM coverage under the Policy was illusory. On March 9, 2020, Pena filed a motion for summary judgment and memorandum in support, asking the district court to declare: (1) the Policy provided illusory UIM coverage based on its definition of an underinsured motor vehicle and (2) the Policy provided illusory UIM coverage based on offsets that eliminated UIM coverage. Viking opposed Pena's motion and filed its own cross-motion for summary judgment. Viking argued that the Policy complied with Idaho's UIM statute, as well as regulations and case law based on the statute. Viking claimed Pena was seeking to obtain excess UIM coverage that the Idaho Legislature did not mandate and for which he did not pay a premium.

On September 2, 2020, the district court entered a memorandum decision and order denying Pena's motion for summary judgment and granting Viking's motion for summary

3

judgment. The district court first held that although the language in the Policy was deficient and different from the definition adopted in Idaho Code section 41-2503(2), the Policy would not be illusory if the district court replaced the policy language with the statutory definition of an underinsured motor vehicle. The court then held that the Policy was not illusory because it had an identifiable group who could collect UIM benefits. Applying the relevant statutes and taking the legislative history recited by this Court in *Wood v. Farmers Insurance Co. of Idaho*, 166 Idaho 43, 454 P.3d 1126 (2019), into consideration, the district court found that the offset provision in the Policy was neither illusory nor contradictory to public policy. Thus, the district court entered a judgment dismissing Pena's complaint with prejudice. Pena filed a timely notice of appeal.

## II. ISSUES ON APPEAL

1.  Whether Viking offered illusory UIM coverage based on the definition of "underinsured motor vehicle."

2.  Whether the limits of UIM coverage can contain a provision offsetting recovery below the $25,000 Idaho law requires.

## III. STANDARD OF REVIEW

Whether an insurance contract violates public policy presents a question of law for this Court to resolve. *Eastman v. Farmers Ins. Co*., 164 Idaho 10, 14, 423 P.3d 431, 435 (2018) (citing *Quiring v. Quiring*, 130 Idaho 560, 566, 944 P.2d 695, 701 (1997)).

## IV. ANALYSIS

### A. The Policy provides illusory coverage.

Pena argues that Viking's policy is illegal and void as against public policy because it provides the illusion of UIM coverage through the declaration and payment of premiums for UIM coverage and then, through unambiguous definitions and exclusions, takes away all UIM coverage.

Idaho Code section 41-2502 governs uninsured motorist and underinsured motorist coverage for automobile insurance. In 2008, the Idaho Legislature amended section 41-2502 to require automobile insurers to offer UIM coverage of at least $25,000, at extra cost to the insured, when selling liability policies. *Wood v. Farmers Ins. Co. of Idaho*, 166 Idaho 43, 45, 454 P.3d 1126, 1128 (2019) (citing Act of March 5, 2008, ch. 69, § 1, 2008 Idaho Sess. Laws 183, 183). This Court interpreted the legislature's intention as protecting Idaho's citizens from drivers carrying policies at or above the statutorily required policy levels but who have insurance insufficient to compensate their tort victims. *Id.* (citing *Hill v. Am. Fam. Mut. Ins. Co*., 150 Idaho 619, 625, 249 P.3d 812, 818 (2011)). "The public policy footings of this law are two-fold: First,

4

UIM coverage is to protect against 'the threat that underinsured motorists pose to public safety,' and second, insuring UIM coverage for an insured's claims up to her policy limits avoids the absurd result where 'Idahoans injured by a totally uninsured driver [would] sometimes recover more than those injured by underinsured drivers.' " *Eastman v. Farmers Ins. Co.*, 164 Idaho 10, 14, 423 P.3d 431, 435 (2018) (quoting *Hill*, 150 Idaho at 624, 249 P.3d at 817). We have also emphasized that UIM coverage should be "scrupulously guarded" because it is "intended to provide excess coverage to compensate an insured against losses for which there would otherwise be no coverage." *Id*. (quoting *Hill*, 150 Idaho at 626, 249 P.3d at 819). That "excess coverage," however, can be specifically limited by the amount of UIM coverage the insured purchased from his insurer. *See Wood*, 166 Idaho at 46, 454 P.3d at 1129 (paying more premium to obtain *additional* UIM coverage subject to offset provisions does not violate public policy).

Supported by these principles, Pena argues that the appropriate remedy, once the district court found the Policy's language to be "deficient," was not to reform the policy by substituting statutory language from Idaho Code section 41-2503(2) for that contained in the insurance policy, but to conclude the policy was illegal and void as against public policy. Pena's argument requires that we address multiple issues: first, whether the district court erred in substituting the statutory definition for the policy's definition of an "underinsured motor vehicle." Second, whether the presumption of validity for policies approved by the Director of the Department of Insurance salvages Viking's policy. Third, we will address the district court's analysis of the Policy based on the holdings of this Court regarding underinsured motorist coverage. Finally, we will address how Idaho's public policy changed in 2008 when the Idaho Legislature amended Idaho's underinsured motorist provisions, and how that change affects the resolution of the issue before this Court.

1. *The district court erred by replacing the Policy's definition of "underinsured motor vehicle" with the language of Idaho Code section 41-2503(2).*

We have never directly addressed what a court should do when an insurance policy definition conflicts with a statutory definition. We note that many states and commentators suggest the appropriate procedure is what the district court did here. *See* Steven Plitt, et al., 2 COUCH ON INSURANCE § 19:3 (3d ed. 2020) ("If the terms of an insurance policy do not comport with the statutory requirements, the statutory requirements supersede the conflicting policy provisions and become part of the insurance policy itself."); *U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co.*,

277 S.W.3d 381, 390 (Tenn. 2009) (same); *see also McLaughlin v. Travelers Com. Ins. Co.*, 476 P.3d 1032, 1036 (Wash. 2020) ("Washington courts have long recognized that relevant statutes are read into insurance contracts."); *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567 (Mich. 2012) (quoting 12A Couch, Insurance, 2d (rev ed.), § 45:694, pp. 331–332 ("[the insurance] policy and the statutes relating thereto must be read and construed together as though the statutes were a part of the contract, for it is to be presumed that the parties contracted with the intention of executing a policy satisfying the statutory requirements, and intended to make the contract to carry out its purpose.").

In general, we agree with this approach, but only when the statutory language can be properly read into the insurance contract. Idaho Code section 41-2503(2) defines an "underinsured motor vehicle" as "a motor vehicle that is a self-insured motor vehicle, or a motor vehicle that is covered by a policy of motor vehicle liability insurance or an indemnity bond, with limits for bodily injury or death at least equal to those limits set forth in section 49-117, Idaho Code." Section 41-2503(2) also specifies that UIM coverage is "*subject to the further definitions, terms and conditions* [of the policy]. . . ." I.C. § 41-2503(2) (emphasis added). Thus, because the statutory definition is "subject to" the definition of the Policy here, the district court erred by replacing the Policy's deficient language by inserting statutory language into the Policy's definitions.

We also have long recognized:

" 'It is the function of the Court to construe a contract of insurance as it is written, and the Court by construction cannot create a liability not assumed by the insurer, nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability.' *Unigard Ins. Group v. Royal Globe, etc.*, 100 Idaho 123, 128, 594 P.2d 633 (1979)." 110 Idaho at 551–552, 716 P.2d at 1323–24.

*Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 667, 735 P.2d 974, 978 (1987) (quoting *Kromrei v. AID Ins. Co. (Mut.)*, 110 Idaho 549, 551, 716 P.2d 1321, 1323 (1986)). To graft the statutory definition into the Policy when the statute itself makes its definition subject to the insurance policy's "definitions [and] terms" violates this well-established precedent.

2. *The usual presumption of validity afforded to insurance policies that have been approved by the Director of the Department of Insurance is unavailable to Viking.*

Even without grafting the statutory definition into the Policy, Viking argues that Pena failed to overcome the presumption that the Policy complies with Idaho law because it was approved by the Director of the Department of Insurance. "Absent an assertion to the contrary, this

Court assumes the policy was submitted to and approved by the Director [of the Department of Insurance]." *Am. Foreign Ins. Co. v. Reichert*, 140 Idaho 394, 399, 94 P.3d 699, 704 (2004) (citing *Hansen*, 112 Idaho at 667, 735 P.2d at 978). In general, "[p]olicies that are approved by the Director of the Department of Insurance are presumed to be in accordance with public policy." *Id*. "However, in our review of the policy if it is determined that the policy only provides an illusion of coverage for its premiums the policy will be considered void for violating public policy." *Id*.

Viking argues that when the Department of Insurance reviewed the Policy, it "was undoubtedly aware of the $25,000 minimum limits in the UIM statute, I.C. § 41-2502(1), and that many Idaho insureds would choose that coverage amount." While this may be true, we do not apply the presumption here for two reasons. First, the Policy defines an "underinsured motor vehicle" in a way at odds with Idaho's statutory definition of that term. We cannot simply infer that the Director of the Department of Insurance knowingly gave a "pass" to a policy that on its face defines policy terms differently than required by Idaho's law. Second, although Viking would ordinarily be afforded the presumption that the Policy complies with Idaho law, we do not find it appropriate given our conclusion set forth below that this policy only provides illusory UIM coverage, even though the insured purchased a $25,000 UIM benefit.

3.  *The district court erroneously relied on Vincent v. Safeco Insurance Co. of America, 136 Idaho 107, 29 P.3d 943 (2001), in concluding that Viking's Policy was not illusory.*

The crux of the issue before us is whether an insurance contract that offers UIM coverage in the same minimum amount as what is legally required for liability insurance renders the UIM coverage illusory. We hold that when minimum-limits UIM is offered, paid for, and then excluded away, as Viking did here, it is illusory.

This Court first explained that an insurance policy's coverage is illusory if

> it appears that if any actual coverage does exist it is extremely minimal and affords no realistic protection to any group or class of injured persons. The declarations page of the policy contains language and words of coverage, then by definition and exclusion takes away the coverage. The fact that there might be some small circumstance where coverage could arguably exist does not change the reality that, when the policy is considered in its entirety, the City was receiving only an illusion of coverage for its premiums. This Court will not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased.

7

*Martinez v. Idaho Ctnys. Reciprocal Mgmt. Program*, 134 Idaho 247, 252, 999 P.2d 902, 907 (2000). A plain reading of this pronouncement makes clear that if a policy "affords no realistic protection to any group or class of injured persons," it is illusory.

Unfortunately, this Court's next case to cite *Martinez's* clear statement of law failed to apply it. *See Vincent v. Safeco Ins. Co. of Am.*, 136 Idaho 107, 112, 29 P.3d 943, 948 (2001). Rather than enforce the requirement as originally stated in *Martinez,* that a policy is illusory if it fails to afford realistic protection "to any group or class of injured persons," 134 Idaho at 252, 999 P.2d at 907, this Court cited the proper standard but then applied it in reverse, holding that a policy is *not illusory* if the "underinsured motorist policy affords realistic protection of any group or class of injured persons." *Vincent*, 136 Idaho at 112, 29 P.3d at 948. Regrettably, *Vincent's* pronouncement changed the focal point of the analysis from protecting injured *persons* who do not have *realistic* insurance protection, to protecting insurance carriers that issue policies under out-of-state requirements that do not measure up to the minimums required by Idaho. *See Vincent*, 136 Idaho at 112, 29 P.3d at 948 (providing the policy was not illusory because the Vincents would have some coverage if they happen to get injured by a driver from Arizona, California, Nevada or Oklahoma who is insured with less than $25,000 minimum liability coverage). This logic twists and overlooks *Martinez's* holding, including its foundational underpinning that "[t]he fact that there might be some small circumstance where coverage could arguably exist does not change the reality that, . . . the [insured] was receiving only an illusion of coverage for its premiums." 134 Idaho at 252, 999 P.2d at 907.

Thus, we take this opportunity to abrogate *Vincent*, 136 Idaho at 112, 29 P.3d at 948 (as well as *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Dixon*, 141 Idaho 537, 542, 112 P.3d 825, 830 (2005) to the extent it relied on *Vincent*): and disavow the following statement that an underinsured motorist policy is not illusory if it "affords realistic protection to any group or class of injured persons." We now reiterate and hold that a policy is illusory if "it appears that if any actual coverage does exist it is extremely minimal and affords no realistic protection to any group or class of injured persons." *Id.*; *see also Point of Rocks Ranch, L.L.C. v. Sun Valley Title Ins. Co.*, 143 Idaho 411, 414, 146 P.3d 677, 680 (2006) (reiterating this benchmark without repeating *Vincent's* misstatement of it). Pena, and those falling into similar factual circumstances, qualify as "any" class of injured person. Applying this standard here, we must conclude that when a policy

only provides an illusion of coverage for its premiums, the policy limitations and exclusions will be considered void because they violate public policy. *See id.*

Viking argues that the offset provision does not make the Policy illusory because it still provides benefits to persons who settle for less than the tortfeasor's policy limits. For example, if Pena had settled his claim against Baker for $21,000, less than her policy limits, and had $100,000 in damages as he claims, the policy would pay Pena $4,000 in UIM benefits. While one could legitimately question why Pena would settle for $21,000 with the tortfeasor when his damages were $100,000, this analogy is precisely the kind of logic that the Court in *Martinez* rejected. Although Viking technically complied with Idaho law by *offering* the requisite $25,000 in UIM coverage, the Policy ultimately created only an illusion of UIM coverage in that amount. Viking's counsel conceded as much at oral argument when he admitted that he could not think of any circumstances in which Pena would ever actually *receive* the full amount of the UIM coverage for which he paid a premium. Simply put, Pena paid a premium for $25,000 in UIM coverage, and Viking has admitted that Pena would never receive $25,000 in UIM coverage. Illusory coverage exists when "[t]he declarations page of the policy contains language and words of coverage, then by definition and exclusion takes away the coverage." *Nat'l Union Fire*, 141 Idaho at 541–42, 112 P.3d at 829–30 (quoting *Martinez*, 134 Idaho at 252, 999 P.2d at 907). That there might be some rare circumstance where coverage might exist is insufficient to save a deficient policy. *Id*. This Court has previously held that we will "scrupulously guard" UIM coverage benefits, *Eastman*, 164 Idaho at 15, 423 P.3d at 436; and we will "not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased." *Martinez*, 134 Idaho at 252, 999 P.2d at 907.

Viking's declaration page reveals that Pena paid a premium for $25,000 in UIM bodily-injury coverage, yet what one hand giveth – the other taketh away. The definitions and exclusions within the Policy endorsement eliminate any possibility of receiving the full benefit of that coverage. The Policy defines "Underinsured motor vehicle" as "[a] **motor vehicle** to which a **bodily injury** liability bond or policy applies at the time of the **car accident** providing **bodily injury** liability limits less than the limit of liability for this coverage," i.e., less than $25,000. But then the Policy provides that an "**Underinsured motor vehicle**" does not mean a vehicle "[i]nsured by a **bodily injury** liability bond or policy at the time of the **car accident** but which provides **bodily injury** limits of liability less than the minimum **bodily injury** liability limits that

9

comply with the financial responsibility law of the policy **state**." Thus, under these definitions, assuming Pena was fortuitous enough to be injured by a California driver with $15,000 in coverage, he would have no UIM coverage—such a vehicle is excluded as "underinsured" by the very terms of the Policy. These definitions and conditions create an illusory policy for Pena and other Viking policy holders who purchased its minimum-limits UIM coverage.

> 4. *This result is supported by the change in Idaho's public policy that took place when the Idaho Legislature amended Idaho's underinsured motorist provisions in 2008.*

As of 2008, insurers in Idaho have been required to offer protection against underinsured motor vehicles to all Idaho drivers seeking insurance. With that amendment, the public policy of Idaho advanced "to protect *Idaho's citizens* from drivers carrying policies above [Idaho's] statutorily required policy levels but who have insurance insufficient to compensate their tort victims." *Hill v. Am. Fam. Mut. Ins. Co.*, 150 Idaho 619, 624, 249 P.3d 812, 817 (2011) (emphasis added). Recognizing that public policy, and our duty to "scrupulously guard such benefits for Idaho citizens," *id.*, we conclude that Viking's policy, as written for $25,000 minimum limits coverage, is illusory under Idaho's public policy to protect those injured by underinsured motorists.

Applying Viking's definition in the Policy, an "underinsured motor vehicle" is one that provides bodily injury liability limits less than the limit of liability for Pena's coverage—less than $25,000. At the same time, the Policy excludes from UIM coverage any motor vehicle with bodily injury liability limits less than the minimum limits of Idaho, which is also $25,000. Thus, Viking has created a scenario where an Idaho insured with UIM coverage as defined in Idaho Code section 41-2503(2) would never receive the full benefit of what he paid for.

This question cuts at the very heart of what Idaho defines as insurance. Idaho Code section 41-102 provides that " 'Insurance' is a contract whereby one undertakes to indemnify another or pay or allow a specified or ascertainable amount or benefit upon determinable risk contingencies." I.C. § 41-102. While an insurer can guard against those "risk contingencies" to limit its exposure to risk, the insurer cannot extinguish what the insured paid for through limitations or exclusions. In addition, Idaho demands honesty and good faith in all insurance matters:

> The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters. Upon the insurer, the insured, and their representatives, and all concerned in insurance transactions, rests the duty of preserving the integrity of insurance.

I.C. § 41-113(2). Insurers must uphold the duty of preserving the integrity of insurance. Unfortunately Viking's policy fails to measure up to this required ideal. Thus, based on our determination that Viking offered illusory UIM coverage, we reverse the district court's grant of summary judgment for Viking and direct judgment be entered for Pena on his declaratory judgment claim on remand.

**B.** **Offset provisions are permissible, so long as the amount of available UIM coverage exceeds the amount of liability coverage required by Idaho law.**

Viking seeks to salvage the Policy by arguing that a UIM policy may offset its coverage by the amount recovered from the at-fault driver's liability insurer. In support, Viking relies on this Court's recent decision in *Wood v. Farmers Insurance Co. of Idaho*, 166 Idaho 43, 454 P.3d 1126 (2019). In *Wood*, an insured driver was seriously injured in an accident and sued her automobile insurer. *Id*. at 44, 454 P.3d at 1127. The at-fault driver's insurer offered Wood the $100,000 bodily injury limits of its policy. *Id*. Wood's damages exceeded $100,000 and Wood filed a UIM claim with her insurer, Farmers Insurance Company of Idaho ("Farmers"). Farmers denied her claim, relying on a provision in the policy that stated the $100,000 UIM limits would be reduced by the amount of the at-fault driver's liability policy, which in this case was $100,000. Thus, the liability limits fully offset the amount Wood could have recovered under her UIM coverage. *Id*.

On appeal, Wood argued that the offset provision which "dilute[d]" UIM coverage was contrary to public policy. *Id*. at 45, 454 P.3d at 1128. This Court rejected Wood's argument, holding that the legislative history and text of Idaho Code section 41-2502 show the Idaho Legislature envisioned different forms of UIM coverage, including offset coverage. *Id*. at 45, 454 P.3d at 1128. The Court deduced that when the legislature created House Bill 429 it intended to protect Idaho's citizens from drivers carrying policies at or above the statutorily required policy levels, but who have insufficient coverage to compensate their tort victims. *Id*. The Court ultimately held that the offset provision in Wood's insurance policy did not contradict public policy. *Id*. at 46, 454 P.3d at 1129. But the Court also recognized that "[u]nlike the provisions in *Hill* and *Eastman,* the offset provision at issue does not *eliminate* UIM coverage if a certain contingency occurs . . . . Rather, it *reduces* UIM coverage by the limit of the at-fault driver's bodily injury insurance." *Id*. (emphasis in original).

11

Here, the district court determined that the Policy's offset provisions were analogous to those present in *Wood*. We disagree. *Wood* is readily distinguishable because it involved higher-than-minimum limits UIM coverage while this case involves minimum UIM coverage limits of $25,000, which is illusory. In *Wood*, by electing a UIM policy of $100,000, there were potential circumstances in which Wood could have encountered a motorist who had less than that amount of coverage. For example, if the at-fault driver in Wood's case had carried only $25,000 of bodily injury insurance, Wood would have received $25,000 from the at-fault driver's insurance carrier and $75,000 from Farmers. 166 Idaho at 46, 454 P.3d at 1129. The UIM coverage here, in contrast, offers "extremely minimal [if any, coverage] and affords no realistic protection to" that "group or class of injured persons" who choose to purchase a minimum-limits UIM policy. *Nat'l Union Fire*, 141 Idaho at 541–42, 112 P.3d at 829–30. If the UIM coverage is written solely for the minimum amount of liability coverage required for all motorists in Idaho, it is highly unlikely that the UIM benefit will ever be paid. This exemplifies an illusory policy to which the offset provision may not apply, because the policy terms excluding such coverage are void and unenforceable. *Martinez*, 134 Idaho at 252–53, 999 P.2d at 907–08.

That said, Viking argues that the Policy reflects Idaho Department of Insurance regulations because the standard UIM disclosure statement given to policy holders recognizes that UIM coverage could provide either excess coverage or difference in limits coverage. The latter is designed to just fill any gaps between the injured driver's recovery from the tortfeasor's liability insurer and the limits of the UIM policy:

> UIM coverage may pay damages for bodily injury to an insured person who is legally entitled to collect damages from the owner or operator of a vehicle with inadequate limits of liability insurance coverage. UIM coverage is offered in different forms by different insurers, and insurers are not required to offer more than one type of UIM coverage. The two most commonly available forms of UIM coverage—"Difference in Limits" (or "Offset") Coverage and "Excess" Coverage —are briefly explained as follows:
>
> - "Difference in Limits" (or "Offset") Coverage - The policy's UIM coverage limits are reduced or eliminated by the amount of any damages recovered by any insured, from or on behalf of any underinsured owner(s) or operator(s).
>
> - "Excess" Coverage — The policy's UIM coverage limits are not reduced by the amount of damages recovered from any underinsured owner(s) or operator(s). UIM coverage limits are available to pay damages when the insured's damages exceed what can be recovered from the owner(s) or operator(s) of an underinsured vehicle.

12

Idaho Dep't of Insurance Bulletin 08-08 (July 24, 2008); *see also* Idaho Admin. Code 18.02.02.015. Viking argues that based on this statement, the offset coverage provided by the Policy was not only permissible, but one of the two "most commonly available forms of UIM coverage."

Our opinion today in no way invalidates an insurer's ability to offer and enforce its offset coverage provisions. The insurer may do so in all cases—excepting those where the chance of receiving benefits would be illusory. Viking's standard UIM policy, including its limitations and exclusions, is fully enforceable when the limit exceeds $25,000. That said, because the legislature requires insurers to issue liability limits of $25,000, UIM coverage limits must exceed $25,000 to avoid a finding that they are illusory.

## C.     Remedy.

Having held the Policy to be illusory in this case, we recognize that "[t]he general rule is that contracts which violate public policy are illegal and unenforceable." *Martinez*, 134 Idaho at 252, 999 P.2d at 907. "When the Court finds that a contract is unenforceable, it will leave the parties in the same situation in which it finds them." *Id*. "This Court has recognized, however, that finding an insurance contract void and unenforceable may defeat the purpose for which a statute has been enacted. In such a case, the Court has enforced the policy." *Id.*; *See also Williams v. Continental Life & Accident Co.*, 100 Idaho 71, 74, 593 P.2d 708, 711 (1979). The problem with enforcing the general rule here is that it would defeat the purpose for the underinsured motorist coverage that Pena bought in the first place. Thus, we choose to follow the remedy prescribed in *Martinez*. "Justice and fairness require" us to enforce the contract between Viking and Pena while prohibiting Viking from relying on its definitions, exclusions or offset provisions. 134 Idaho at 253, 999 P.2d at 908. Thus, Viking is estopped from denying coverage based on the illusion of coverage it created.

## V. CONCLUSION

We conclude that Viking sold Pena illusory UIM coverage. Therefore, we hold that the UIM coverage provided in the Policy should have been available to cover Pena's claim. Accordingly, the decision of the district court is reversed, the judgment in Viking's favor is vacated, and the case is remanded for entry of judgment in Pena's behalf on his claim for declaratory judgment. We additionally abrogate *Vincent v. Safeco Ins. Co. of Am.*, 136 Idaho 107, 112, 29 P.3d 943, 948 (2001) and *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Dixon*, 141 Idaho

13

537, 542, 112 P.3d 825, 830 (2005), to the extent they held that an underinsured motorist policy is not illusory if it "affords realistic protection to any group or class of injured persons." Costs are awarded to Pena as the prevailing party on appeal.

Justices STEGNER and MOELLER, CONCUR.

BRODY, Justice, concurring.

I concur with the Court's decision to remand this case for entry of declaratory judgment in favor of Pena. I write separately to emphasize that the Policy is not deficient on its face, but, rather, it is the Policy language, coupled with minimum UIM limits, which renders the UIM insuring clause and the offset provision void as against public policy.

## I.     Analysis

When an insured is seeking insurance coverage under a policy there are generally three sequential questions: (1) does the loss fall within the scope of the insuring clause; (2) has the loss been excluded from coverage or otherwise limited in some fashion; and (3) have all the conditions of payment been satisfied. The disputes in this case involve the scope of the UIM insuring clause and coverage limitations.

**A.  The UIM insuring clause when coupled with minimum limits is void as against public policy because it is contrary to the requirements of Idaho Code sections 41-2502(1) and 41-2503(2).**

Pena's first argument involves a challenge to the Policy's definition of the term "underinsured motor vehicle." Put in context, the definition plays a critical role in the scope of the UIM insuring clause which states:

> **We** will pay damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be caused by a **car accident** and result from the ownership, upkeep or use of an **underinsured motor vehicle**.

(emphasis in original). The Policy defined the term "underinsured motor vehicle" as: "A **motor vehicle** to which a **bodily injury** liability bond or policy applies at the time of the **car accident** providing **bodily injury** liability limits *less than* the limit of liability for this coverage." (emphasis in bold italics added).

Pena contends the Policy's definition of "underinsured motor vehicle" does not comply with statutory mandates, and, when applied to a minimum limits UIM policy, renders the UIM coverage illusory because there is no circumstance under which Viking's obligation to pay will be

14

triggered. In response, Viking asserts that it did not deny Pena's claim because it fell outside the scope of coverage and concedes that the statutory definition of "underinsured motor vehicle" set forth in Idaho Code section 41-2503(2) controls this dispute. Viking urges the Court to move past the coverage issue and address only the validity of the offset provision.

While I might ordinarily be inclined to accept Viking's invitation to address only the offset provision, the coverage issue should not be sidestepped here for two reasons. First, Pena has filed suit requesting declaratory relief. If a provision of the policy is void as against public policy, Pena should receive a declaration to that effect even if it does not put an end to the dispute over whether he is entitled to payment under the Policy. Second, and more importantly, Viking argues that it is entitled to a presumption that the Policy complies with Idaho law because it was approved by the Director of the Department of Insurance. I agree with the Court that we cannot infer the Director knowingly gave a pass to a policy which Viking now concedes does not comply with statutory mandates. As such, we need to walk through how the Policy, in combination with minimum UIM limits, fails to comply with Idaho law.

### 1. The UIM coverage fails to comply with statutory mandates.

The Court has long held that a policy of insurance is a contract, and, in the absence of an ambiguity, must be interpreted as any other agreement and understood in its plain and ordinary sense based on the wording that is used. *Casey v. Highlands Ins. Co.*, 100 Idaho 505, 509, 600 P.2d 1387, 1391 (1979) (adopting reasoning of dissent in *Corgatelli v. Globe Life & Acc. Ins. Co.*, 96 Idaho 616, 621, 533 P.2d 737, 742 (1975)). The Court has also recognized, however, that the right to contract is not unlimited and must give way when a contract provision is contrary to public policy. *Hill v. Am. Fam. Mut. Ins. Co.*, 150 Idaho 619, 623, 249 P.3d 812, 816 (2011) (citation omitted). Public policy may be found in statutes, judicial decisions, and the Constitution. *Id.* (citation omitted). Whether a provision in an insurance policy is void as against public policy is a question of law for the Court to determine. *Id.* (citation omitted).

Public policy challenges are somewhat common, but rarely successful. The leading case involving a successful public policy challenge is *Martinez v. Idaho Cntys. Reciprocal Mgmt. Program*, 134 Idaho 247, 999 P.2d 902 (2000). In *Martinez*, a reserve police officer employed by the City of Rathdrum was seriously injured in a head-on collision while working. 134 Idaho at 248, 999 P.2d at 903. He received worker's compensation benefits, but, in order to receive additional compensation, made a claim for uninsured motorist ("UM") benefits under the City's

15

auto policy issued by the Idaho Counties Reciprocal Management Program ("ICRMP"). ICRMP denied the officer's claim, and Martinez filed suit. *Id.* at 240, 999 P.2d at 904.

A careful reading of the Court's decision in *Martinez* shows the police officer made *two* separate and successful public policy challenges. First, Martinez argued the UM coverage in the ICRMP policy was void as against public policy because the coverage was "illusory." To fall within the scope of the UM insuring clause, Martinez had to meet the definition of an "insured." The policy defined an "insured" as someone who was using an insured automobile at the time of the accident and was also legally responsible for the use of the vehicle at the time of the accident. *Id.* at 251, 999 P.2d at 906. The Court concluded that only an employee of the city could meet those requirements. The policy, however, also excluded UM coverage for bodily injuries to employees. *Id.* at 252, 999 P.2d at 907. Based on the definition of "insured" and the subsequent exclusion of claims of employees, the Court held the UM coverage was illusory, and, therefore, void as against public policy:

> Upon review of these requirements and exclusions, it appears that if any actual coverage does exist it is extremely minimal and affords no realistic protection to any group or class of injured persons. The declarations page of the policy contains language and words of coverage, then by definition and exclusion takes away the coverage. The fact that there might be some small circumstance where coverage could arguably exist does not change the reality that, when the policy is considered in its entirety, the City was receiving only an illusion of coverage for its premiums. This Court will not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased. *Bonner County v. Panhandle Rodeo Ass'n, Inc.,* 101 Idaho 772, 776, 620 P.2d 1102, 1106 (1980) ([T]he ambiguous circumstance in which a policy has been issued purportedly providing coverage but with exclusionary provisions which, if applied, would narrow that coverage to "defeat the very purpose or object of the insurance.").

*Id.*

After addressing the illusory coverage argument, the Court also addressed Martinez's claim that section III(C) of the policy was void as against public policy because it violated the requirements of Idaho Code section 41-2502, one of the statutory provisions that is at issue in this case. *Id.* At that time, section 41-2502(1) required insurance companies to provide UM coverage when issuing an auto policy; the insured then had the option of rejecting that coverage in a signed writing. The Court explained that section IIIC contained the only "offer" of UM coverage made by the insurer. *Id.* That "offer" essentially stated that UM coverage would only be provided if

mandated by law. *Id.* Since UM coverage was not mandatory under Idaho law (insurance companies must provide it, but an insured can reject it), the policy automatically withheld UM coverage from every policy sold. *Id.* Based on the language of section III(C), the Court concluded UM coverage would never be provided and ICRMP never made an actual offer of coverage to the City of Rathdrum. The Court held the policy was issued in violation of Idaho Code section 41-2502 and declared it void as against public policy. The Court held ICRMP was estopped from denying Martinez's UM claim. *Id.*

In this case, Pena argues the Policy's definition of "underinsured motor vehicle," when applied to minimum limits UIM coverage, does not comply with the requirements of Idaho Code sections 41-2502(1) and 41-2503(2). He takes his argument a step further and contends that not only is there no coverage for his UIM claim involving Baker, there is no situation which would ever trigger coverage thus rendering the UIM insuring clause illusory and void as against public policy. For me, there is no need to address Pena's illusory coverage argument since the failure to comply with section 41-2502(1) is grounds to invalidate the insuring clause.

Section 41-2502(1) requires that every auto policy issued in Idaho provide UIM coverage in at least the minimum amounts required by Idaho's financial responsibility law ($25,000 per person and $50,000 per accident):

> Except as otherwise provided in subsection (2) of this section, ***no owner's or operator's policy of motor vehicle liability insurance*** that is subject to the requirements of section 49-1212(1) or (2), Idaho Code, ***shall be delivered or issued for delivery*** in this state with respect to any motor vehicle registered or principally ***garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as set forth in section 49-117***, Idaho Code, as amended from time to time, under provisions approved by the director of the department of insurance, ***for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of*** uninsured and ***underinsured motor vehicles*** because of bodily injury, sickness or disease, including death, resulting therefrom.

I.C. § 41-2502(1) (emphasis added). Section 41-2503(2) defines an "underinsured motor vehicle" as that term is used in the statute as one that has liability limits ***at least equal to*** $25,000 per person and $50,000 per accident:

> For purposes of underinsured motorist coverage, subject to the further definitions, terms and conditions of such coverage, the term "underinsured motor vehicle" means a motor vehicle that is a self-insured motor vehicle, or a motor vehicle that is covered by a policy of motor vehicle liability insurance or an indemnity bond,

17

with limits for bodily injury or death *at least equal to* those limits set forth in section 49-117, Idaho Code.

I.C. § 41-2503(2) (emphasis added).

Viking issued Pena a state-specific endorsement titled "UNDERINSURED MOTORISTS COVERAGE ENDORSEMENT – IDAHO". As explained previously, the endorsement began with an insuring clause which tied Viking's obligation to pay a UIM claim to the tortfeasor's use of an "underinsured motor vehicle":

> **We** will pay damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle**. The **bodily injury** must be caused by a **car accident** and result from the ownership, upkeep or use of an **underinsured motor vehicle**.

The endorsement defined the term "underinsured motor vehicle" as: "A **motor vehicle** to which a **bodily injury** liability bond or policy applies at the time of the **car accident** providing **bodily injury** liability limits *less than* the limit of liability for this coverage." (emphasis in bold italics added).

Under the UIM insuring clause, Pena has a claim for UIM benefits only if Baker's car satisfies the definition of "underinsured motor vehicle." Because Pena's UIM limit is $25,000, Baker must have liability limits less than that amount to qualify as "underinsured." Baker has the minimum liability limits of $25,000. Baker's limits are equal to, but not less than, Pena's limits which means, by the endorsement's definition, Baker was not driving an "underinsured motor vehicle" at the time of the collision. As a result, Pena's claim for UIM benefits falls outside the scope of the UIM insuring clause.

There can be no doubt that the endorsement's definition of "underinsured motor vehicle" when coupled with minimum UIM limits does not comply with the statutory definition of underinsured motor vehicle, and the Policy fails to deliver the UIM coverage set forth in Idaho Code section 41-2501(1). In fact, if a vehicle meets the endorsement's definition of underinsured motor vehicle (i.e., has liability limits of *less than* $25,000/$50,000), it logically cannot satisfy the statutory definition (i.e., underinsured motor vehicle is one with liability limits *at least equal to* $25,000/$50,000). The question becomes what to do about the discrepancy in the definitions.

**2. The district court's decision overlooks Pena's claim for declaratory relief.**

Recognizing the endorsement did not comply with Idaho Code section 41-2501(1), the district court held the endorsement's definition was "deficient." Rather than declaring the insuring

clause void as against public policy, however, the district court substituted the statutory definition for the endorsement's definition and then went on to address the validity of the offset provision. Pena argues the district court's approach was erroneous.

I agree with the Court that this is not a situation where we can simply substitute definitions and will not belabor that point here. But, although perhaps a subtle point, I would also make clear that the Policy language itself was not "deficient." Had Viking sold Pena a UIM policy with limits of $100,000, Baker's vehicle would have been an "underinsured motor vehicle" as defined by the endorsement and as defined by Idaho Code section 41-2503(2). The fact that the endorsement's definition does not track the statutory definition precisely is not determinative of Pena's challenge. As I have emphasized from the outset, it is the endorsement's definition when coupled with minimum UIM limits which offends Idaho Code sections 41-2502(1) and 41-2503(2). For me, the real error in the district court's analysis is that it does not take into consideration the relief Pena requested. Pena filed suit seeking declaratory relief, not breach of contract damages. As such, he should receive a declaration that the insuring clause, as a result of the endorsement's definition of underinsured motor vehicle and Pena's minimum UIM limits, is void as against public policy, and Viking is estopped from denying coverage on the basis that the claim falls outside the scope of the insuring clause. Of course, that ruling, standing alone, does not end the parties' dispute. We still must resolve the validity of the setoff provision.

## B. The setoff provision when coupled with minimum UIM limits renders the UIM coverage sold to Pena illusory.

Viking denied Pena's claim based on a setoff provision in the endorsement which expressly provided that any amount payable under the UIM coverage would be reduced by the amount paid on behalf of the owner or operator of the underinsured motor vehicle. In other words, Viking took the position that it owed Pena nothing because he had $25,000 in UIM coverage and received $25,000 in liability coverage from Baker. The endorsement stated in part:

> Any amounts payable under this part will be reduced by the following:
>
> (1) Any payments made by or on behalf of the owner or operator of the **underinsured motor vehicle**. Also any payment made by or on behalf of any other person or organization which may be legally liable.
>
> . . . .
>
> No one will be entitled to duplicate payments under this policy for the same elements of damages.

19

> **We** will reduce the **insured person's** total damages by any amount available to that **insured person**, under any **bodily injury** liability bonds or policies applicable to the **underinsured motor vehicle** that such **insured person** did not recover as a result of a settlement between that **insured person** and the insurer of the **underinsured motor vehicle**. However, any reduction of the **insured person's** total damages will not reduce the limit of liability for this coverage. This reduction shall not apply if **we** advance payment to the **insured person** in an amount equal to the tentative settlement with the insurer of the **underinsured motor vehicle**.

Pena challenges this setoff provision, arguing that it is void as against public policy because it renders the UIM coverage sold to him illusory. The district court granted summary judgment in favor of Viking, reasoning the setoff provision was no different than that recently approved by the Court in *Wood v. Farmers Insurance Co. of Idaho*, 166 Idaho 43, 454 P.3d 1126 (2019). Moreover, like the situation in *Vincent v. Safeco*, 136 Idaho 107, 29 P.3d 943 (2001), UIM benefits may be paid if Pena were involved in a collision with an out-of-state driver with lower liability limits than Idaho requires. Viking also argues on appeal that UIM benefits may be owed in situations where the insured settles his claim against the underinsured motorist for less than liability limits.

I agree with the Court that this case is distinguishable from *Wood* because Viking sold Pena a minimum limits UIM policy. I also agree with the Court that Viking's reliance on *Vincent v. Safeco* is misplaced. Rather than disavowing a single sentence, however, I would hold that *Vincent* was abrogated by the enactment of House Bill 429 in 2008 which amended Idaho Code sections 41-2501(1) and 41-2503(2) to require insurance companies to provide underinsured motorist coverage in every policy of insurance unless rejected in writing by the insured. *See* INSURANCE—MOTOR VEHICLE INSURANCE—MOTOR CARRIERS, 2008 Idaho Laws Ch. 69 (H.B. 429).

In *Vincent*, the insureds brought suit against Safeco and its agents after Betty Vincent was seriously injured in a car wreck by an underinsured motorist. Betty and her husband brought claims for negligent underwriting and negligent supervision and also a declaratory judgment claim seeking to declare the underinsured motor vehicle coverage provided by their policy as "illusory". As in this case, the Safeco policy defined an underinsured motor vehicle as one with liability limits less than those of the insured. The Vincents' UIM policy had a limit of $25,000 which meant the policy provided no coverage. The Court rejected the Vincents' claim, holding that Idaho had no public policy governing underinsured motorist coverage and that the policy was not illusory

20

because it would provide coverage if Betty Vincent had been injured in a collision while in California, a state which has lower liability limits than Idaho.

Vincent was decided years before the Idaho legislature amended Idaho Code sections 41-2502(1) and 41-2503(2) to require insurance companies to provide underinsured motorist coverage in every policy in an amount at least equal to Idaho's minimum liability limits. Today's decision makes it clear that Safeco's underinsured motor vehicle definition in Vincent, when coupled with minimum limits UIM coverage, would be void as against public policy and the remedy would be to construe the policy to effectuate coverage. See, e..g, Martinez v. Idaho Cntys. Reciprocal Mgmt. Program, 134 Idaho 242, 247–48, 999 P.2d 902, 907–08 (2000) (holding that policy provisions which are illusory or void for other public policy reasons must be construed to effectuate coverage). Given the legislative enactment, I would expressly hold that Vincent has been abrogated.

Viking contends the UIM coverage is not illusory because an insured may receive some UIM benefits if the insured settles a claim against a tortfeasor for less than minimum liability limits. In other words, if Pena had settled his claim against Baker for $21,000, less than her policy limits, and had $100,000 in damages as he claims, the policy would pay Pena $4,000 in UIM benefits. The problem I have with this position is Viking's acknowledgement during oral argument that there is not a single situation where Viking will ever pay the $25,000 in UIM coverage shown on Pena's declarations page. The fact that there is some remote circumstance where minimal coverage could exist, does not change the reality that Pena and every insured who purchases a minimum limits UIM policy with a difference in limits offset provision receives only an illusion of coverage that complies with Idaho law. Martinez v. Idaho Cntys. Reciprocal Mgmt. Program, 134 Idaho 247, 999 P.2d 902 (2000). "This Court will not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased." Id. (citation omitted). As such, I would hold the setoff provision is void as against public policy and Viking is estopped from denying Pena's claim on that basis.

Judge pro tem WOOD CONCURS.